COFFIN, Senior Circuit Judge.
 

 Appellant Aan D. Emerson has been ordered to pay a civil penalty of $185,000 for
 
 *-1497
 
 numerous violations of federal aviation law.
 
 [1]
 
 He claims that the assessment violates both the Excessive Fines Clause of the Eighth Amendment and the Double Jeopardy Clause of the Fifth Amendment. We find no constitutional error, and therefore affirm.
 

 I.
 
 Factual and Procedural Background
 

 On February 15,1994, the administrator of the Federal Aviation Administration (FAA) issued an emergency order revoking Emerson’s commercial pilot certificate. The action was based on allegations that Emerson was responsible for more than thirty unlawful flights. About a month later, on March 29, 1994, the United States filed the complaint that underlies this appeal, seeking civil penalties based on the same conduct that triggered the FAA order, namely, the operation of charter flights after FAA authorization to conduct such flights had been revoked.
 
 [2]
 
 The complaint sought a $10,000 penalty for each alleged violation. An amended complaint later increased- the number of asserted violations to fifty-three.
 

 Emerson filed several motions seeking to dismiss the complaint, arguing,
 
 inter alia,
 
 that requiring him to defend the same allegations in both the administrative and civil proceedings constituted a violation of the Double Jeopardy Clause of the Fifth Amendment. He also claimed that the monetary penalties sought were in violation of the Excessive Fines Clause. The district court denied the motions, finding that the FAA’s administrative action was remedial in nature, rather than punitive, and that double jeopardy principles therefore were not implicated. The court made no explicit ruling on the excessive fines issue.
 

 In March 1996, Emerson and the United States stipulated to the district court that twenty-six of the flights alleged to be unlawful were operated in violation of applicable federal aviation law and regulations. Eleven of those were round-trip flights, and thus were counted as two separate violations, bringing the total number of admitted violations to thirty-seven.
 
 [3]
 
 The stipulation left for trial only the issue of the appropriate penalty.
 

 A two-day bench trial was held in April 1996. The court rejected Emerson’s claim that he held a good-faith belief that the flights were lawful, and imposed a civil penalty of $5,000 per violation, for a total of $185,-000, 927 F.Supp. 23. In reducing the penalty from that requested' by the government (at that point, $8,500 per violation, or $314,500), the court noted Emerson’s limited financial ability to pay the higher amount. It also found, however, that a significant civil penalty was appropriate in light of the nature, circumstances, extent and gravity of Emerson’s violations, his knowledge or reckless disregard of the law, his extensive enforcement history, and the effect of a large penalty in deterring future violators and fostering respect for and compliance with the law.
 
 [4]
 

 
 *-1496
 
 This appeal followed. Emerson again asserts that imposition of the civil penalty subsequent to the FAA administrative action violates the Double Jeopardy Clause, and contends that the amount of that penalty transgresses the Excessive Fines Clause.
 

 II.
 
 Excessive Fines
 
 Issue
 
 [5]
 

 The Excessive Fines Clause protects individuals against abusive penalties imposed by the government.
 
 See generally Austin v. United States,
 
 509 U.S. 602, 606-12, 113 S.Ct. 2801, 2803-07, 125 L.Ed.2d 488 (1993);
 
 id.
 
 at 627, 113 S.Ct. at 2814-15 (Scalia, J., concurring in part and concurring in the judgment);
 
 Browning-Ferris Industries v. Kelco Disposal, Inc.,
 
 492 U.S. 257, 266-68, 109 S.Ct. 2909, 2915-17, 106 L.Ed.2d 219 (1989). Although precedent provides no precise guideposts for evaluating a fine’s “excessiveness,” Justice Scalia has observed that “the touchstone is value of the fine in relation to the offense,”
 
 Austin,
 
 509 U.S. at 627, 113 S.Ct. at 2815 (Scalia, J., concurring).
 
 See also Harmelin v. Michigan,
 
 501 U.S. 957, 978 n. 9, 111 S.Ct. 2680, 2693 n. 9, 115 L.Ed.2d 836 (1991) (opinion of Scalia, J.) (assuming for the sake of argument that “excessive fines” means “disproportionate fines”).
 

 Here, the court imposed a fine one-half the size of that permitted by the relevant statute, assessing $5,000 for each of Emerson’s thirty-seven admitted violations rather than the statutory maximum of $10,-000 per violation.
 
 See
 
 49 U.S.C. § 46301(a)(2).
 
 [6]
 
 We are persuaded that this penalty, though substantial, is constitutionally permissible.
 
 Cf. United States v. Pilgrim Market Corp.,
 
 944 F.2d 14, 22 (1st Cir.1991) (upholding penalty against Eighth Amendment challenge where fine was less than half the statutory maximum and one-half of the government’s recommendation).
 

 We note initially that the district court thoroughly explored Emerson’s explanation for the underlying violations, as well as his enforcement history, and found a pattern of persistent disregard of government regulation. The court was unimpressed with Emerson’s evidence that he held a good-faith belief that the flights were lawful,
 
 [7]
 
 and found “particularly unpersuasive” evidence of reliance on advice from counsel. It further rejected Emerson’s contention that the large number of admitted violations and the record of his past regulatory problems overstated the severity of his actual conduct:
 

 It is of no moment that many of the violations involved record-keeping or other technical functions and that none resulted in serious personal injury. The federal aviation laws safeguard public safety as a collective whole and compliance with the entire regulatory scheme, and not just the rules governing matters that have an immediate and direct effect on life and limb, is presumed. The maintenance of proper records and like tasks is a crucial component in the prevention of accidents and, as such, the failure to comply cannot be viewed as a benign violation simply because of the clerical or technical nature of the violated regulations.
 

 927 F.Supp. at 28-29.
 

 We detect no flaw in the court’s reasoning that even technical air safety rules are important, and no clear error in its finding that Emerson did, in fact, engage in repeated, highly culpable conduct.
 
 See Sullivan v. Young Bros. & Co.,
 
 91 F.3d 242, 246-47 (1st Cir.1996). With this supportable foundation, the conclusion the court drew — that the lat
 
 *-1495
 
 est series of violations warranted a significant penalty — is equally unassailable. Moreover, the court recognized that a substantial penalty would be important as a deterrent to potential violators, since “aviation safety rests in large part on voluntary compliance by those who, in all probability, will never face the regulatory scrutiny encountered by the defendants.” 927 F.Supp. at 29 .
 

 Despite these conclusions inclining it toward a penalty at or near the magnitude requested by the government, the court did not order such a fine. It gave offsetting effect to Emerson’s limited financial resources. Although he continues to earn income from an aviation business and has ownership interests in various real estate and airplanes, the evidence indicated that the properties are heavily mortgaged and that Emerson also owes a substantial tax debt. Based on his economic circumstances alone, the court reduced the penalty from the government’s proposed $8,500 per violation to $5,000 per violation, producing the total fine of $185,000.
 

 We are hardpressed to see the “excessiveness” in this thoughtfully levied fine. First, as noted earlier, the “touchstone” is the value of the fine in relation to the particular offense, not the defendant’s means. Moreover, though Emerson appears at present not to have the resources to pay the entire penalty, he is employed and, still in his early 50s, should have longterm future earning potential.
 
 [8]
 
 In addition, the continuing nature of the obligation has significance beyond the amount; the fact that the debt will remain with Emerson for some time to come is a sobering reality that should discourage him (and deter others) from committing future violations. Additionally, if Emerson’s future prospects become more clearly limited, and the fine consequently becomes more clearly onerous, no barrier apparently exists to his seeking an amelioration from the district court.
 

 In short, the district court’s judgment reflects a careful balance between Emerson’s means and the justifiable punishment for these latest violations. Thus, the fine bears a reasonable relationship not only to the offense but also to the offender: Consequently, it does not offend the Constitution.
 
 [9]
 

 III.
 
 Double Jeopardy Issue
 

 Emerson alternatively seeks to invalidate the fine under the Double Jeopardy Clause, claiming that it constituted double punishment in light of the earlier ■ administrative sanction of decertification. There is no contention that the civil -fine is not punitive; the issue is the nature of the FAA penalty that preceded it. If the certificate revocation is remedial, rather than punitive, the later fine is permissible.
 

 We recently have established that, in determining whether an administrative action constitutes punishment for double jeopardy purposes, a court must consider
 

 the totality of the circumstances, including the source of the authority under which the debarment is imposable, the goals underpinning the authorizing statute, the order itself, the purposes it serves, and the circumstances attendant to its promulgation.
 

 United States v. Stoller,
 
 78 F.3d 710, 721 (1st Cir.1996) (administrative debarment by
 
 *-1494
 
 FDIC);
 
 see also Allen v. Attorney General of State of Maine,
 
 80 F.3d 569, 573 (1st Cir. 1996) (driver’s license suspension). We have recognized that “the force of a double jeopardy claim depends upon the particular circumstances of each individual case,”
 
 id.
 
 at 576, and have identified “[t]he pivotal question” to be “whether the sanction, as applied, exacts rough remedial justice,”
 
 id.
 
 at 576-77 (footnote omitted).
 

 The district court thoroughly explored the double jeopardy question within this framework.
 
 See
 
 Order of March 29,1996. We see no need to revisit its conclusion that the FAA’s authority and goals are anchored in a concern for air safety.
 
 See
 
 Order at 6-7;
 
 see also, e.g.,
 
 49 U.S.C.A. § 44701 (previously 49 U.S.C.App. § 1421).
 
 [10]
 

 The court further examined whether the FAA’s specific enforcement action in this case was tailored to the remedial goals of federal aviation law, and determined that it was. The court noted that the FAA’s investigation of Emerson revealed a number of unsafe and unlawful practices, and observed that the decision to limit the defendant’s flying privileges was a “logical[]” response. It further noted that Emerson was not subject to a monetary fine, which, in some instances, would suggest a punitive goal.
 

 Analogizing the FAA’s action here to the administrative decision in
 
 Allen
 
 to suspend the driver’s license of an individual arrested for drunk driving,
 
 see
 
 80 F.3d at 574, the district court noted our holding that the license suspension ‘“represents a reasonable effort to protect the public from motorists who have demonstrated a dangerous propensity to drink before they drive.’” It then continued:
 

 The safety concerns underlying federal aviation laws, no less than those which give rise to state motor vehicle laws, strongly suggest that “[t]he sanction [of certificate or license revocation] therefore is principally in service to a remedial goal.”
 

 Order
 
 at 9.
 

 We share the district court’s perspective that the FAA’s actions here were driven by its remedial responsibilities. Indeed, the specific language of the agency’s order reflects this focus on considerations of air safety rather than on punishment:
 

 By reason of the foregoing facts and circumstances, the Administrator has determined that you are not qualified to hold an Airman Certification, in that you lack the required care, judgment, and responsibility. Therefore, the Administrator finds that the safety in air commerce or air transportation and the public interest require the revocation of your Airman Certificate No. 2130849, with all its ratings and privileges. Furthermore, the Administrator finds that an emergency exists and safety in air commerce or air transportation requires the immediate effectiveness of this Order.
 

 FAA’s Emergency Order of Revocation at 5. The “facts and circumstances” to which the order referred included both details of the current violations and a listing of prior violations. Although it unquestionably is true that a governing authority might view this record of unlawful conduct as warranting punishment, the emphasis here is not on slapping Emerson’s wrist but on preventing him from continuing to present a safety risk. He is deprived of his Airman Certification not as punishment for bad conduct, but because he is “not qualified.” The immediate implementation of the order further buttresses the judgment that it originated out of a concern for safety, not retribution.
 

 Emerson acknowledges that the language of the statute authorizing the license revocation, 49 U.S.CA. § 44701, suggests that the FAA’s only purposes are non-punitive: to ensure safety and competence in aviation.
 
 *-1493
 
 He contends, however, that the most severe of the available enforcement options — including decertification — are, in fact, punitive, and he cites in support a 1994 memorandum describing aspects of the FAA’s “Compliance and Enforcement Program.”
 
 See
 
 App. at 311-314. The document notes that the FAA’s program ranges from educational and remedial efforts to “punitive legal enforcement remedies, including criminal sanctions.”
 
 Id.
 
 at 312. He cites in particular a section of the memorandum that describes “progressive discipline,” starting with a letter of correction to a first-time violator and culminating in “a punitive legal enforcement sanction, i.e., a civil penalty or certificate suspension,” for offenders who fail to sustain compliance with the law.
 
 Id.
 
 at 313-14.
 

 On the basis of this memorandum, Emerson points out that the FAA Administrator plainly views his enforcement power to include punitive and deterrent measures, and he maintains that it was this punitive power that was used against him in the revocation order. We addressed a somewhat similar argument in
 
 Allen,
 
 80 F.3d at 574, where the petitioner contended that the increasing length of a driver’s license suspension based on the number of offenses reflected a punitive aim. We acknowledged there that tying the severity of a penalty to the number of offenses may indicate a retributive intent, but pointed out that it also may reflect a protective intent. The escalating suspensions, we observed, reflected a desire to protect the public from those who, on average, present the greatest safety hazard — recidivist drunk drivers.
 

 So, too, here. Following the reference to “punitive legal enforcement sanction[s]” in the FAA memorandum stressed by Emerson,
 
 see id.
 
 at 314, the document states that, “Repetitive violations by a certificate holder may even demonstrate
 
 a lack of qualification
 
 warranting certificate revocation.” (Emphasis added.) This is precisely the basis given for revocation of Emerson’s certificate.
 
 See supra
 
 at 82 (“[T]he Administrator has determined that you are not qualified to hold an Airman Certification, in that you lack the required care, judgment and responsibility.”). Thus, making our conclusion even more compelling than in
 
 Allen,
 
 the remedial nature of the administrative sanction is explicit.
 

 Characterizing the sanction as primarily remedial does not, of course, mean that we must conclude that it has had neither deterrent nor punitive effect. Unquestionably, the loss of his license has had a severe impact on Emerson and his aviation business. It is equally apparent that the FAA’s more serious enforcement measures are designed with deterrence at least partially in mind. Yet, we previously have recognized that “the fact that something akin to punishment occurs along with, and incidental to, a sanction’s overriding remedial purpose will not transform a permissible civil penalty into a prohibited multiple punishment,”
 
 Stoller,
 
 78 F.3d at 724. Likewise, the fact that deterrence is among the objectives underlying a civil sanction “is merely one factor to be taken into account in the decisional calculus,”
 
 Allen,
 
 80 F.3d at 576 (citing
 
 Bae v. Shalala,
 
 44 F.3d 489, 494 (7th Cir.1995)). Indeed, deterrence should be an anticipated byproduct of aggressive safety enforcement.
 

 We note, finally, Emerson’s reliance on
 
 Pangburn v. Civil Aeronautics Bd.,
 
 311 F.2d 349, 354-55 (1st Cir.1962), where we held that the Civil Aeronautics Board could order revocation as a sanction for “disciplinary purposes,” apart ixom the qualifications or competency of a pilot. Having such authority does not mean, however, that it is wielded in every case of revocation. Here, as we have explained, the evidence persuades us that the sanction “displays colors more consistent with the remedial end of the spectrum,”
 
 Stoller,
 
 78 F.3d at 721. Consequently, the district court did not err in refusing to dismiss the civil action on double jeopardy grounds.
 

 Affirmed.
 

 [1]
 

 . The complaint in this case also was filed against Emerson d/b/a Emerson Aviation. Emerson Aviation no longer exists as an enterprise, and we refer throughout this opinion to Emerson individually as the sole defendant/appellant. We note, additionally, that a corporation named Emerson Aviation, Inc. was formed in 1994 after the violations at issue in this case. The "New. Emerson” acquired many of Emerson Aviation’s operations, assets and liabilities, though no compensation passed from one entity to the other. Appellant's wife is president of New Emerson, and he testified at trial that he is an employee without any role as officer or shareholder.
 

 [2]
 

 . In May 1992, the FAA had revoked Emerson’s "Airman Certificate" and Emerson Aviation’s "Air Taxi Certificate,” both of which were required for appellant to operate charter flights. In its 1992 order, the FAA found that Emerson "... lack[s] the required care, judgment and responsibility ...” to hold an Airman Certificate. It determined,
 
 inter alia,
 
 that Emerson had operated an aircraft that was not in airworthy condition, having failed to repair a crack that he knew about and that rendered the aircraft unairwor-thy. The FAA found that an emergency in air safety existed, and it ordered an immediate revocation of both certificates. On appeal, the National Transportation Safety Board upheld the revocations.
 

 [3]
 

 . Emerson argued before the district court that each roundtrip flight constituted only a single violation. The government contended that the applicable precedent required them to be counted as two separate violations. Emerson does not raise this argument on appeal, and we therefore do not consider it.
 

 [4]
 

 . The court also' issued a permanent injunction that,
 
 inter alia,
 
 barred Emerson and Emerson
 
 *-1496
 
 Aviation from performing any aviation-related acts without proper FAA authority to do so.
 

 [5]
 

 .The government contends that Emerson waived this issue by failing to raise it
 
 after
 
 the district court imposed a specific fine, asserting only an abstract claim in pretrial motions that the maximum penalty permitted by statute was excessive. We have doubts that the claim was preserved, but nonetheless choose to consider it briefly.
 
 See Cheffer v. Reno,
 
 55 F.3d 1517, 1523 (11th Cir.1995) (“[C]hallenges under the Excessive Fines clause are ... generally not ripe until the actual, or impending, imposition of the challenged fine.”).
 

 [6]
 

 . At the time of Emerson's violations in 1992 and 1993, this provision was codified at 49 U.S.C.App. § 1471.
 

 [7]
 

 . The court felt that his explanations were based on "convenient interpretations” of federal regulations that "strainfed] reason and common sense". 927 F.Supp. at 28.
 

 [8]
 

 . Emerson testified at trial that New Emerson offers various aviation services to the public, including scenic flights, aircraft maintenance, hangar services, mechanic's work, and flight instruction. Although, as noted earlier, Emerson presently has no ownership interest in the company, New Emerson acquired all of Emerson Aviation's affairs and his future relationship with the company therefore remains to be seen.
 

 [9]
 

 . Emerson argues that in determining excessiveness we must consider whether the penalty imposed here is disproportionate to such penalties in similar cases, and offers in comparison several cases involving regulatory violations that he claims demonstrate the unfairness of his punishment. We note, firstly, that the proportionality concern in an excessive fines case is generally considered to be a question of "whether the fine imposed is disproportionate to. the crime committed,”
 
 Harmelin v. Michigan,
 
 501 U.S. 957, 1009, 111 S.Ct. 2680, 2709, 115 L.Ed.2d 836 (1991) (White, X, dissenting), not whether a given fine is disproportionate to other fines imposed on other defendants. Although review of penalties in similar cases may be instructive in evaluating the range of penalties appropriate for a given crime, we think it of limited assistance in judging whether a given fine exceeds constitutional bounds.
 

 [10]
 

 . This section,
 
 inter alia,
 
 directs the FAA Administrator to "promote safe flight of civil aircraft in air commerce” by prescribing minimum standards "in the interest of safety” for the design and construction of aircraft, regulations "in the interest of safety” for inspecting and servicing aircraft, and minimum safety standards for air carriers. 49 U.S.C.A. § 44701(a), (b). When prescribing regulations and standards, the Administrator must consider "the duty of an air carrier to provide service with the highest possible degree of safety."
 
 Id.
 
 at (d)(1). The Administrator is further charged with acting “in a way that best tends to reduce or eliminate the possibility or recurrence of accidents in air transportation.”
 
 Id.
 
 at (c).