.UNITED STATES of America

v.

**ONE PARCEL OF REAL PROPERTY WITH BUILDINGS, APPURTENANCES, AND IMPROVEMENTS, KNOWN AS 154 MANLEY ROAD, LOCATED IN THE TOWN OF BURRIVILLE, RHODE ISLAND.**

**No. C.A. 93–0511ML.**

United States District Court,
D. Rhode Island.

May 4, 1998.

Michael Iannotti, Asst. U.S. Atty., Providence, R.I., for Plaintiff.

Ernest Barone, North Providence, R.I., for Defendant.

## MEMORANDUM AND DECISION

LISI, District Judge.

This is a civil forfeiture action brought by the government against the property of claimant George Zapata. The forfeiture of Zapata's home and real estate is sought pursuant to 21 U.S.C. § 881(a)(7). Zapata argues that the forfeiture of his property is prohibited by the limitations of the Excessive Fines Clause of the Eighth Amendment.

### I. Procedural History

This court previously dismissed this action believing that forfeiture of Zapata's property would violate the Double Jeopardy Clause of the fifth Amendment. In so doing, it did not reach Zapata's Eighth Amendment argument now made here. On appeal, the parties and the Court of Appeals agreed that the court's judgment must be vacated in light of *United States v. Ursery*, 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996), and the case remanded for consideration of the Eighth Amendment claim. *See United States v. 154 Manley Road*, 91 F.3d 1 (1st Cir.1996), *vacating*, 908 F.Supp. 1070, 1083 (D.R.I.1995). Pursuant to Local Rule 7(g), this court granted the parties' joint motion that the matter be reassigned to this writer because they had already briefed and argued the issue before me in the prior proceeding. *See* D.R.I. Loc. R. 7(g). Now after a trial on the merits, the case is in order for decision. I find the facts as follows.

### II. Facts

On September 10, 1993, an informant made arrangements with one Kevin McCutcheon to buy a quantity of cocaine. The informant gave McCutcheon $1000 in marked currency, and McCutcheon, in turn, arranged with Zapata to purchase the cocaine at Zapata's home located at 154 Manley Road in Burriville, Rhode Island. Later that day, Zapata sold McCutcheon $1000 worth of cocaine from that property. McCutcheon was subsequently arrested.

After the sale, federal agents executed a warrant to search the Manley Road premises. This search yielded two ounces of cocaine contained in a jar buried in the yard adjacent to Zapata's house, a triple beam scale, and $2,231 in United States currency,

which included the $1000 of marked bills given to McCutcheon by the informant. Zapata was then placed under arrest, and on September 13, 1993, the defendant property was seized. At that time, Zapata's wife and children resided there.

On November 23, 1993, Zapata pled guilty to one count of distribution of cocaine and one count of possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(c). These offenses each carried a maximum statutory penalty of up to twenty years imprisonment, $1 million in fines, and not less than three years supervised release. Before imposing sentence, however, the court held an evidentiary hearing to resolve certain factual issues raised by Zapata.

The sentencing hearing centered on three factual issues pertaining to the extent of Zapata's drug distribution activities. First, Zapata challenged whether all the cash found in the house were drug proceeds. Second, Zapata challenged whether a notebook which was also seized from the house constituted a "drug ledger." Third, Zapata claimed that the sale of cocaine to McCutcheon was the only such transaction in which he had ever been involved. With respect to the first two points the sentencing judge found that the government had failed to meet its burden. As to the third, the court saw things somewhat differently than Zapata would have preferred.

Zapata testified at the hearing that the September 10, 1993 sale to McCutcheon was an isolated event. However, the government contradicted this testimony with McCutcheon, who testified that Zapata had also sold him cocaine from that location on two other occasions that summer. The court found that McCutcheon was credible, and that Zapata was not. In fact, the court enhanced Zapata's sentence for attempting to obstruct justice by giving untruthful testimony at the sentencing hearing and sentenced him to serve 24 months on each count to run concurrently. No fine was imposed because the

court found that Zapata was unable to pay one. This civil forfeiture proceeding was then pending.

With the agreement of all parties, the property was sold to a private purchaser during the pendency of this action. At the time the property was seized, it was appraised between $82,500 and $101,000; however, after all lien holders were paid, Zapata's equity in the property was $48,972.31. It is the forfeiture of this entire amount which Zapata claims would violate the Excessive Fines Clause of the Eighth Amendment.

### III. Discussion

In *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), the Supreme Court held that a civil forfeiture action brought pursuant to 21 U.S.C. § 881(a)(7) is subject to the limitations of the Excessive Fines Clause of the Eighth Amendment. *See id.* at 622, 113 S.Ct. 2801. In so holding however, the Court did not adopt any particular test for excessiveness, and instead left the task of devising a workable framework to the lower courts. *See id.* at 622–23, 113 S.Ct. 2801. Since that time, two schools of thought have emerged.

One view, known generally as the "nexus" or "instrumentality" test, was advocated by Justice Scalia in *Austin.* Grounded in the historical antecedents to today's civil forfeiture action, this view hinges on the notion that it is the property which is guilty of the offense. The central inquiry "is not *how much* the confiscated property is worth, but whether the confiscated property has a close enough relationship to the offense." *Austin,* 509 U.S. at 628, 113 S.Ct. 2801 (Scalia, J., concurring) (emphasis in original). Providing that a *close enough* relationship can be said to exist, in Justice Scalia's opinion, neither the value of the property nor the culpability of the owner are of any significance. *See id.* at 626–27, 113 S.Ct. 2801 ("Scales used to measure out unlawful drug sales ... are confiscable whether made of the purest gold or the basest metal.") [1]

---

1. At the same time, under Justice Scalia's construction, the closeness of the relationship necessary may be substantial. He reminds us that at early common law, a very limited scope of prop-

erty was subject to confiscation. *See Austin,* 509 U.S. at 628, 113 S.Ct. 2801 (Scalia, J., concurring). Thus in his view, an *in rem* forfeiture would go beyond the Excessive Fines Clause "if

The other predominant view is referred to as "proportionality." This approach examines whether the forfeiture, considered as a punishment, is disproportionate to the offense committed, and essentially involves a comparison of the harshness of the forfeiture with the severity of the crime. This theory is said to have its roots in the history of the Eighth Amendment, *see Solem v. Helm*, 463 U.S. 277, 284–87, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) (tracing proportionality to Magna Charta and English Bill of Rights), and the plain meaning of the Excessive Fines Clause, *see Harmelin v. Michigan*, 501 U.S. 957, 1009, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (White, Blackmun, and Stevens, JJ., dissenting) ("[t]he Eighth Amendment does not refer to proportionality in so many words, but it does forbid 'excessive' fines, a restraint that suggests that a determination of excessiveness should be based at least in part on whether the fine imposed is disproportionate to the crime committed."). As between instrumentality and proportionality, the federal courts of appeals are divided.

The Fourth Circuit has aligned itself closely with Justice Scalia's concurrence in *Austin*. In *United States v. Chandler*, 36 F.3d 358 (4th Cir.1994), *cert. denied*, 514 U.S. 1082, 115 S.Ct. 1792, 131 L.Ed.2d 721 (1995), the court accepted that the property-offense nexus is the critical focus of the excessiveness inquiry but expanded the test to include some consideration of the property owner's culpability. *See id.* at 363–64. The *Chandler* court structured the test as having three parts: (1) the nexus between the offense and the property and the extent of the property's role in the offense, (2) the role and culpability of the owner, and (3) the possibility of separating offending property that can readily be separated from the remainder. *See id.* at 365.[2]

■ Nearly every other court of appeals to have considered the issue has incorporated some aspect of proportionality in its formulation of excessiveness under the Excessive Fines Clause.[3] The Eighth and Eleventh circuits review only proportionality. *See United States v. 427 and 429 Hall Street*, 74 F.3d 1165, 1170 (11th Cir.1996) ("the appropriate inquiry with respect to the Excessive Fines Clause is, *and is only*, a proportionality test") (emphasis supplied); *United States v. Bieri*, 68 F.3d 232, 236 (8th Cir.1995) (requiring only that claimant establish "gross disproportionality"), *cert. denied*, 517 U.S. 1233, 116 S.Ct. 1876, 135 L.Ed.2d 172 (1996).[4] The Second, Third, Seventh, Ninth, and Tenth circuits have employed a hybrid instrumentality-proportionality test. *See United States v.. 25 Sandra Court*, 135 F.3d 462, 465–66 (7th Cir.1998); *United States v. 829 Calle de Madero*, 100 F.3d 734, 738 (10th Cir.1996); *United States v. 6380 Little Canyon Road*, 59 F.3d 974, 982 (9th Cir.1995); *United States v. Milbrand*, 58 F.3d 841, 847 (2d Cir.1995), *cert. denied*, 516 U.S. 1182, 116 S.Ct. 1284, 134 L.Ed.2d 228 (1996); *U.S. v. Premises Known as RR# 1, Box 224*, 14 F.3d 864, 876 (3d Cir.1994). In determining proportionality, the cases vary as to how the

it applies to property that cannot properly be regarded as an instrumentality of the offense— the building, for example, in which an isolated drug sale happens to occur." *Id.; cf. United States v. Plescia*, 48 F.3d 1452, 1462 (7th Cir.) ($30,000 interest in real estate forfeited on account of one phone call received at claimant's home), *cert. denied*, 516 U.S. 836, 116 S.Ct. 114, 133 L.Ed.2d 66 (1995).

2. The court elaborated on the nexus component as follows:

In measuring the strength and extent of the nexus between the property and the offense, a court may take into account the following factors: (1) whether the use of the property in the offense was deliberate and planned or merely incidental and fortuitous; (2) whether the property was important to the success of the illegal activity; (3) the time during which the property was illegally used and the spacial extent of its use; (4) whether its illegal use was an isolated event or had been repeated; and (5) whether the purpose of acquiring, maintaining or using the property was to carry out the offense.
*Id.*

3. The Sixth Circuit has not adopted any particular approach. *See United States v. 11869 Westshore Drive*, 70 F.3d 923, 930 (6th Cir.1995), *cert. denied*, —— U.S. ——, 117 S.Ct. 57, 136 L.Ed.2d 20 (1996). The First, Fifth, and District of Columbia circuits have yet to consider the issue.

4. The Eighth Circuit has since suggested that instrumentality may play some part in the analysis. *See United States v. 6040 Wentworth Avenue South*, 123 F.3d 685, 690 n. 7 (8th Cir.1997).

severity of the offense or the harshness of the punishment should be measured and what factors should be considered, however, a central theme to all is that insofar as a civil forfeiture operates as a punishment, it is a punishment on a *person*, not on property. *See 427 and 429 Hall Street*, 74 F.3d at 1171. As such, the penalty should not be meted out to an excessive degree. *See Alexander v. United States*, 509 U.S. 544, 558, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993).

In this case, the government urges the court to apply what is effectively an instrumentality test.[5] Zapata, on the other hand, argues that some aspect of proportionality should enter into the court's consideration. He recommends the test employed by the Ninth Circuit in *Little Canyon Road*.

■ Having surveyed the case law, this court concludes that the hybrid analysis is the appropriate inquiry under the Excessive Fines Clause. While the court does not doubt that instrumentality review serves to "scrutinize governmental action ... when the State stands to benefit," *Harmelin v. Michigan*, 501 U.S. at 978–79 n. 9, 111 S.Ct. 2680 (opinion of Scalia, J. and Rehnquist, C.J.), it does believe that, once regarded as a fine, a forfeiture should bear "a reasonable relationship not only to the offense but to the offender," *United States v. Emerson*, 107 F.3d 77, 81 (1st Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 61, 139 L.Ed.2d 24 (1997). And indeed, the *Austin* majority expressly sanctioned in the remand of that case consideration of both "the connection between the property and the offense" as well as "other factors in determining whether the forfeiture of Austin's property was excessive." *Austin*, 509 U.S. at 623 n. 15, 113 S.Ct. 2801. However, even applying the test advocated by Zapata, the court concludes that forfeiting Zapata's interest in his property would not violate the Eighth Amendment.

The test articulated in *Little Canyon Road* evaluates excessiveness in two stages. First,

the government must establish that the property was an instrumentality of the crime. Second, the claimant must show that forfeiture of his property would be grossly disproportionate to the crime. *See Little Canyon Road*, 59 F.3d at 985. The Ninth Circuit explained the factors which contribute to the proportionality prong in the following way:

> In determining proportionality, the district court, bearing in mind any *in personam* punishment of the owner, should consider, *inter alia*, the following factors in determining the *harshness of the forfeiture:*
>
> (1) the fair market value of the property;
>
> (2) the intangible, subjective value of the property, e.g., whether it is the family home; and
>
> (3) the hardship to the defendant, including the effect of the forfeiture on defendant's family or financial condition.
>
> The *culpability of the owner* should include consideration of the following factors:
>
> (1) whether the owner was negligent or reckless in allowing the illegal use of his property; or
>
> (2) whether the owner was directly involved in the illegal activity, and to what extent; and
>
> (3) the harm caused by the illegal activity, including (a) (in the drug trafficking context) the amount of drugs and their value, (b) the duration of the illegal activity, and (c) the effect on the community.

*Id.* at 985–986 (emphasis in original; footnotes and citations omitted).

■ Looking to the instrumentality prong, the court notices that circuit precedent requires under 21 U.S.C. § 881(a)(7) that the government establish a "substantial connection" between the property and the offense. *See United States v. 28 Emery Street*, 914 F.2d 1, 3–4 (1st Cir.1990); *United States v.*

---

5. To be more specific, the government suggests that the court limit its consideration to: "(1) whether the criminal activity involving the property has been sufficiently extensive in terms of time and/or space, (2) whether the role the property played was integral or indispensable to the commission of the crime(s), and (3) whether the

property was deliberately selected to secure a special advantage in the commission of the crime(s)." *See also United States v. 9844 S. Titan Court*, 865 F.Supp. 709, 715 (D.Colo.1994), *aff'd in part and rev'd in part*, 75 F.3d 1470 (10th Cir.1996).

*One Parcel of Real Property,* 900 F.2d 470, 472 (1st Cir.1990); *United States v. One 1972 Chevrolet Corvette,* 625 F.2d 1026 (1st Cir. 1980). Thus, even if the Eighth Amendment were to permit a lesser threshold, the statute, as interpreted by the First Circuit, requires a higher one. But even under this most stringent review, the court nevertheless finds that the government has met its burden of establishing a substantial nexus between the property and the offense.

Zapata pleaded guilty to the charges of distribution and possession with intent to distribute cocaine. Thus, the starting point for this analysis is that Zapata was dealing in drugs. It has been established that on at least three separate occasions between July and September 1993, Zapata sold cocaine from his Manley Road property. It has further been established that he stored the drugs there, measured them there, and concealed the proceeds there. It is clear from these facts that the property's involvement was more than incidental or fortuitous. It was his base of drug dealing operations. More than symbolic of the property's deep involvement in Zapata's illegal activities is the fact that he concealed the drugs literally buried in the earth beside his house. In this respect, the Manley Road property was an essential instrument of Zapata's offense, and the court is satisfied that the instrumentality prong has been established.

■ Turning to the proportionality prong, the court must balance culpability against harshness. The standard observed by more than one court is that to establish a violation of the Eighth Amendment, the disproportionality must "reach such a level of excessiveness that in justice the punishment is more criminal than the crime." *829 Calle de Madero,* 100 F.3d at 738 (citing *United States v. Sarbello,* 985 F.2d 716, 724 (3d Cir.1993)); *accord United States v. Hines,* 88 F.3d 661, 664 (8th Cir.1996). Here, this cannot be said.

■ Zapata argues that given the fact that the sentencing court sentenced him at the low end of the guideline range, the forfeiture of his remaining interest in Manley Road would be grossly disproportionate to the offenses he committed by reason of: (1) the tangible value of the property (his equity interest of $48,972.31), (2) the intangible value of the property as a home to his wife and children, and (3) the hardship that he will suffer because he works "on and off" and his wife is expecting another child. Although the existence of these facts tip the scales slightly in his favor, the court is not persuaded that forfeiture of Zapata's entire interest in the defendant property would be grossly excessive given the totality of the situation.

Zapata's crime is a serious one and his culpability is great. He engaged in the deliberate and repetitive practice of concealing and selling cocaine. The maximum sanctions authorized by Congress for his offenses is up to forty years imprisonment and a fine of up to $2 million. While the sentencing court indeed sentenced him at the low end of his guideline range, the stated reason why no fine was imposed was because of a perceived inability to pay. Here, Zapata's ability to pay is not in issue. This court may pick up where the sentencing judge left off. *See Ursery,* 518 U.S. 267, 116 S.Ct. at 2147, 135 L.Ed.2d 549 (civil forfeiture subsequent to sentencing does not offend principles of double jeopardy). In light of the seriousness, the deliberateness, and the repetitiveness of the crime committed, this court does not believe that a fine of $48,972.31 is a disproportionately harsh penalty. *Cf. United States v. Pilgrim Market Corp.,* 944 F.2d 14, 22–23 (1st Cir.1991) (less than half statutory penalty not excessive for repeatedly selling rotten food products.).

■ With respect to the hardships that Zapata claims this forfeiture will work on his wife and children, the court cannot help but notice that the property has been sold. Zapata's wife and children no longer reside there. Even if they did, however, it was Zapata who made the choice of location and deliberately conducted his business there. He intentionally placed his family in harm's way. In this regard, I find Zapata's hardship argument to be completely disingenuous and wholly lacking in any merit. *See Bieri,* 68 F.3d at 237 (parents' "current concern for children's best interest rings hollow given their prior willingness to use the children's home as a wholesale drug distribution cen-

ter."). It is true that the value of the forfeited property will work some hardship on Zapata's family, and perhaps this case is yet an another sobering "reminder that the Federal Constitution does not prohibit everything that is intensely undesirable." *Bennis v. Michigan,* 516 U.S. 442, 454, 116 S.Ct. 994, 134 L.Ed.2d 68 (1996) (Thomas, J., concurring). However, to permit a drug dealer to shield his property with innocent minor children would be to adopt a rule that only encourages exposing children to drugs. While there may be a rare case where such considerations may be credited, Zapata's plaint rings equally hollow today.

### IV. Conclusion

For the reasons stated herein, I find that the government has met its burden of showing that the subject property has a substantial connection to Zapata's drug selling operation. I further find that Zapata has failed to demonstrate that the forfeiture of his property is so disproportionate as to render it prohibited by the Eighth Amendment.

Judgment shall enter in favor of the United States of America.

SO ORDERED.