**UNITED STATES of America,
Plaintiff,**

v.

**Peter MACKBY, Defendant.**

**No. C 98–1310 SBA.**

United States District Court,
N.D. California.

Sept. 3, 2002.

Sara Winslow, United States Attorney's Office, San Francisco, CA, for Plaintiff.

Patric Hooper, Hooper Lundy & Bookman, Los Angeles, CA, for Defendant.

## ORDER RE EXCESSIVE FINES CLAUSE

ARMSTRONG, District Judge.

The United States ("Government") commenced this action against defendant, Peter Mackby, alleging violations of the False Claims Act, 31 U.S.C. § 3729. Following a three-day court trial, the Court found in favor of the Government and entered judgment against Mackby in the amount of $729,454.92. Mackby subsequently appealed to the Ninth Circuit Court of Appeals which, in a published opinion, affirmed this Court's finding of liability but remanded the action "for further development of the record to determine whether the civil penalty and treble damages presently contained in the district court's judgment violate the Excessive Fines Clause of the Eighth Amendment." *United States v. Mackby,* 261 F.3d 821, 831 (9th Cir.2001). Having read and considered the briefs filed by the parties in connection with the remand, the Court finds that the judgment previously entered by the Court does not violate the Eighth Amendment.[1]

### BACKGROUND

The facts of this case are set forth in the Ninth Circuit's opinion, and will only be briefly summarized herein. Mackby and his business partner, Michael Leary

---

1. This matter is suitable for disposition without a hearing. Fed.R.Civ.P. 78.

("Leary"), managed and owned a physical therapy clinic known as the Asher Clinic. Prior to June 1988, the Asher Clinic billed Medicare Part B for physical therapy services provided to Medicare patients by various therapists employed by Asher Clinic, using Leary's personal identification number ("PIN").[2] Mackby and Leary became embroiled in a lawsuit. As part of the settlement, Mackby acquired Leary's interest and assumed sole control over the Asher Clinic in June 1988. Since Leary was no longer affiliated with the clinic, Mackby began submitting bills for Medicare Part B claims using the PIN of his physician-father, M. Judson Mackby, M.D. ("Dr.Mackby"). However, Dr. Mackby never provided medical services at or for Asher Clinic, referred any patients to the clinic, nor was he involved with the care or treatment of its patients. He was also unaware that his son was using his PIN to obtain payment of Medicare claims.[3] Mackby eventually sold the Asher Clinic in May 1997 for $1.7 million.

In March 1998, the Government filed the instant action against Mackby, alleging violations of the FCA. The Government claimed that Mackby violated the Act by directing his clinic to submit claims to Medicare for physical therapy services with an unauthorized provider number, to wit, the PIN which in actuality belonged to Dr. Mackby. During the time period encompassing 1992 to 1996, Mackby caused 8,499 false claims to be submitted to Medicare, resulting in payments totaling $331,078. A three-day bench trial took place in February 1999. After considering the evidence and testimony presented, the Court found in favor of the Government. (Pl.'s Am. Findings of Fact and Conclusions of Law ("FFCL") at 10, filed March 8, 1999.) The Court found that between 1992 and July 1996, the Asher Clinic submitted $58,151.64 in claims which exceeded Medicare's annual payment limit per beneficiary for PTIP's. (*Id.; see also supra* n. 2.) Based on this figure, the Court imposed a treble damage award of $174,454.92. (*Id.*) The Court also imposed a civil penalty of $555,000.00 based on a minimum penalty of $5,000.00 per beneficiary per year that exceeded Medicare's annual payment limit for PTIPs, i.e., 111 claims. (*Id.*) On March 10, 1999, the Court entered judgment against Mackby in the amount of $729,454.92. (See Judgment, filed March 10, 1999.)

Mackby filed an appeal with the Ninth Circuit challenging his liability and the amount of the monetary judgment. The appellate court affirmed this Court's determination that Mackby had violated the FCA. *Mackby*, 261 F.3d at 829, 831 ("Because the evidence established all of the elements of Mackby's violation of the FCA, the district court properly concluded that he violated that statute."). With regard to

2. The Medicare program covers services through Part A and Part B. Part B, the only part at issue, provides for the payment of physical therapy services in two instances: (1) physical therapists in independent practice ("PTIP") or (2) physicians, who may personally provide physical therapy services, or through licensed and qualified professional employees when such services are "incident to" services rendered by the physician. Medicare caps the amount that a PTIP can bill on behalf of any one Medicare beneficiary in any calendar year. In contrast, there is no payment cap on physical therapy services furnished by a physician or incident to a physician's services. *See Mackby*, 261 F.3d at 824–25 (general discussion of Medicare Part B). The Asher Clinic was not qualified to bill Medicare as a PTIP. In addition, by falsely representing the Asher Clinic as a physician-run practice, Mackby was able to evade the cap on Medicare payments. *Id.* at 829.

3. Mackby's suggestion in his opening memorandum that his father's testimony was "perjured or coerced" is unsubstantiated and wholly irrelevant to the instant proceedings. (Def.'s Opening Brief at 2.)

the judgment, however, the Ninth Circuit remanded the action for the limited purpose of determining whether the civil penalty and treble damage award violates the Excessive Fines Clause of the Eighth Amendment. *Id.* at 831. The court stated:

> We conclude the civil sanctions provided by the False Claims Act are subject to analysis under the Excessive Fines Clause because the sanctions represent a payment to the government, at least in part, as punishment. *Inquiry must be made, therefore, to determine whether the payment required by the district court is so grossly disproportionate to the gravity of Mackby's violation as to violate the Eighth Amendment. [Citation] For purposes of that inquiry, the record must be further developed by the district court.* For example, one of the factors to be considered is whether a fine as large as that imposed by the district court is required to achieve the desired deterrence. That and other factors that may be relevant to the inquiry should be addressed in the first instance by the district court. Accordingly, we remand this case to the district court for a determination of whether the $555,000 fine was unconstitutionally excessive.

*Mackby*, 261 F.3d at 830 (emphasis added).[4]

The Ninth Circuit also concluded that the treble damage award is subject to an Excessive Fines Clause analysis, and remanded the action "to the district court for its consideration the question whether a treble damage award in this case would be unconstitutionally excessive." *Id.* at 830–31. However, the court noted that "the amount of the civil penalty and the amount of treble damages need not be considered as if the other did not exist. To the

contrary, the amount of one will no doubt bear upon the district court's excessive fines analysis with regard to the other." *Id.* at 831. By Order of this Court, the parties have each submitted memoranda in connection with these issues.

### LEGAL STANDARD

■ The Excessive Fines Clause of the Eighth Amendment prohibits the government from imposing "excessive fines" as punishment. *See* U.S. Const. amend. VIII. "A fine is unconstitutionally excessive if (1) the payment to the government constitutes punishment for an offense, and (2) the payment is grossly disproportionate to the gravity of the defendant's offense." *Mackby*, 261 F.3d at 830 (citing *United States v. Bajakajian*, 524 U.S. 321, 327–28, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998)). In this respect, the Court should consider (1) whether the violation was related to other illegal activities, (2) the availability of other penalties and the maximum penalties which could have been imposed, (3) the extent of the harm caused, and (4) the amount of the forfeiture relative to the gravity of the offense. *United States v. 3814 NW Thurman Street, Portland, Or., A Tract of Real Property*, 164 F.3d 1191, 1197–98 (9th Cir.1999); *see also Vasudeva v. United States*, 214 F.3d 1155, 1161 (9th Cir.2000) (examining the "the severity of the offense, the criminal fine that could have been imposed, and the harm caused by the defendant.").

### DISCUSSION

#### A. *Other Related Activities*

■ The first factor for consideration is whether the misconduct at issue is related to any other illegal activities. *Thurman*,

---

4. Under the FCA, a defendant may be liable for "a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the

amount of damages which the Government sustains . . . ." 31 U.S.C. § 3729(a).

164 F.3d at 1197. In this case, there is no indication that Mackby was involved in other illegal activity.

### B. *Other and Maximum Penalties Which Could Have Been Imposed*

The Court next considers the availability of other penalties and the maximum penalties that could have been imposed. *See id.* The maximum penalties under the FCA, as applied to this case, are substantial. The FCA authorizes imposition of a civil penalty of up to $10,000 per claim as well as three times the actual damages sustained by the Government. 31 U.S.C. § 3929(a). Mackby caused 8,499 false claims to have been submitted, thereby exposing him to a maximum civil penalty of $84,990,000.[5] In addition, based on the improper payment of $331,078.00 in federal funds, the maximum treble damage award the Court could have imposed was $993,234.00. *Id.* 31 U.S.C. § 3729(a). Thus, Mackby's maximum exposure is almost $86 million.

There is no dispute that the amount of the judgment -$729,454.92—is within the range prescribed by statute, and as such, is presumptively constitutional. *United States v. 817 N.E. 29th Drive, Wilton Manors, Fla.*, 175 F.3d 1304, 1309 (11th Cir.1999) ("if the value of forfeited property is within the range of fines prescribed by Congress, a strong presumption arises that the forfeiture is constitutional."). Significantly, the judgment imposed is but a fraction of what could have been imposed. The Government did not seek a penalty for each of the 8,499 false claims submitted by Mackby between 1992 and 1996. Rather, it requested the imposition of a penalty for only 111 claims, reflecting one claim per beneficiary per year that exceeded the PTIP payment limit. As to these 111 claims, the Government sought the minimum penalty of $5,000, rather than the statutory maximum of $10,000. Further, the Government limited its damage claim from $331,078 to $58,151.64. The latter figure reflected the difference between the amount that Medicare paid to the Asher Clinic and the amount which the clinic would have been entitled to receive if it were a qualified PTIP -which it was not.

The fact that the civil penalty and treble damage award requested by the Government and ultimately entered by the Court are far below the amounts which could have been imposed supports the conclusion that the judgment is not grossly disproportionate to the gravity of Mackby's conduct. The Ninth Circuit and other federal courts have consistently found that civil penalty awards in which the amount of the award is less than the statutory maximum do not run afoul of the Excessive Fines Clause. *E.g., Balice v. U.S. Dept. of Agric.*, 203 F.3d 684, 699 (9th Cir.2000) (holding that a $225,500 fine did not violate the Eighth Amendment where the maximum fine was $528,000, notwithstanding the lack of monetary loss to the government); *Ghaith R. Pharaon v. Board of Governors of the Fed. Reserve Sys.*, 135 F.3d 148, 156 (D.C.Cir. 1998) (holding that a $37 million penalty did not violate the Excessive Fines Clause since "the penalty is proportional to his violation and well below the statutory maximum [of $111.5 million]"); *United States v. Emerson*, 107 F.3d 77, 79 (1st Cir.1997) (holding that "a fine one-half the size of that permitted by the relevant statute, assessing $5,000 for each of [defendant's] thirty-seven admitted violations rather than the statutory maximum of $10,000 per violation ... though substantial, is constitutionally permissible"); *United States v. Advance Tool Co.*, 902 F.Supp. 1011, 1018 (finding that an award of $365,000.00 as a civil penalty under the FCA did not violate

---

**5.** Actual damages are not required for imposition of a civil penalty. *U.S. ex rel. Hagood v.*

*Sonoma County Water Agency*, 929 F.2d 1416, 1421 (9th Cir.1991).

the Eighth Amendment where maximum penalty was over $3.4 million, notwithstanding the Government's failure to prove any actual damages).

Mackby acknowledges that the combined maximum penalty of almost $86 million far exceeds the amount of the judgment actually imposed by the Court. Nonetheless, he argues that the FCA does not authorize the Government to "unilaterally" determine the amount of the penalty and damages sought in a particular FCA case. Mackby also accuses the Government of abusing its "prosecutorial discretion" by attempting "to extort a large money settlement from Mr. Mackby ...." (Def.'s Reply at 15.) The import of these contentions is unclear. While a plaintiff in an FCA action may certainly request an amount certain in penalties and damages, the actual amount of the award is determined by the court, not the plaintiff. *Mackby* 261 F.3d at 830–31. Moreover, his hyperbole aside, Mackby presents no legal authority or evidence to support his arguments. The Court therefore finds that the amount of the judgment relative to Mackby's maximum exposure weighs in favor of the Government.

### C. *Extent of the Harm Caused*

"In determining whether the forfeiture is grossly disproportionate given the gravity of the offense, the court should consider the extent of the harm caused." *Thurman,* 164 F.3d at 1197. Relevant to this consideration is the government's actual loss. *Id.* Under the FCA, "[o]rdinarily the measure of the government's damages would be the amount that it paid out by reason of the false statements over and above what it would have paid if the claims had been truthful." *United States v. Woodbury,* 359 F.2d 370, 379 (9th Cir. 1966). Here, the Government paid a total of $331,078 in Medicare claims as a direct result of Mackby's submission of false claims, i.e., claims improperly bearing his

father's PIN. Had the claims been truthful, Mackby would have been entitled to nothing, since he was neither providing nor supervising the provision of physical therapy services. However, as noted, the Government is not claiming the full amount of this loss. Instead, the Government voluntarily restricted its claimed loss to $58,151.64, which represents the amounts paid between 1992 and July 1996 which exceeded the annual payment limit per beneficiary for PTIPs.

In response, Mackby contends that the Government incurred no loss because he was entitled to reimbursement for physical therapy services below the annual cap on payments. (Mackby Reply at 3–4.) Specifically, he contends that Medicare regulations entitled the Asher Clinic to submit Medicare Part B claims because the clinic was a "supplier" rather than a "provider" of health care services. (*Id.*) However, this argument has been considered and rejected by this Court as well as the Ninth Circuit. As such, Mackby is barred from rearguing the merits of this claim. *See Vizcaino v. U.S. Dist. Court for Western Dist. of Wash.,* 173 F.3d 713, 719 (9th Cir.1999) (noting that upon remand from an appellate court, the district court must proceed in accordance with the mandate and may not allow litigants to relitigate issues which they have previously had an opportunity to address).

Next, Mackby asserts that the Government suffered no harm because all of the patients for whom he submitted false Medicare claims actually received physical therapy services, and that "Medicare would have paid the same for services that it actually paid to the Asher Clinic if Asher Clinic had submitted 'true claims.'" (Def.'s Opening Brief at 9.) Indeed, Mackby asserts that he actually saved the Government money: "if the patients had gone to another rehabilitation center or some

other institutional provider of physical therapy services, rates greater than actually paid to the Asher Clinic would have been paid because Medicare pays the reasonable costs of physical therapy services furnished at an institutional provider without imposing the 'artificial' limit [resulting from the cap on Medicare payments]." (*Id.*) According to Mackby, since the Government allegedly suffered no loss, the fine imposed is excessively punitive.

■ Mackby's argument misses the mark. The measure of the Government's damages is not a function of the value of the underlying services provided nor the amounts that it would have legitimately paid to another authorized provider of those services. *See U.S. ex rel. Hopper v. Anton,* amount 91 F.3d 1261, 1266 (9th Cir.1996) ("[T]he [FCA] attaches liability, not to underlying fraudulent activity, but to the 'claim for payment.'"). Instead, the amount the Government paid in response to the false claims is an appropriate measure of damages. *Cf., United States v. TDC Management Corp.,* 288 F.3d 421, 428 (D.C.Cir.2002) (affirming district court's use of a "but for" measure of damages in an FCA action, based on the amount the government would have paid had the claim been truthful). The Court further notes that Mackby's "no harm no foul" argument was considered and rejected in *Peterson v. Weinberger,* 508 F.2d 45 (5th Cir.1975), a decision cited with approval by the Ninth Circuit in this case. *See Mackby,* 261 F.3d at 826.

In *Peterson,* a non-physician owner of a physical therapy company called Zodiac Enterprises used the provider number and signature of his physician-brother, Dr. Peterson, to bill Medicare. Like Mackby, Dr. Peterson did not provide any of the physical therapy services at issue. The defendants argued that there was no viola-

tion of the FCA since "the patients receiving ... services were entitled to them under Medicare, there was no financial loss to the Government, and the monies paid by the Government were therefore a liability which the Government was statutorily obligated to pay." *Id.* at 52. The Fifth Circuit flatly rejected this argument:

> The services were rendered by Zodiac who was not a certified provider. It could not have been paid, had it submitted a bill to Blue Cross. Furthermore, it is abundantly clear that Dr. Peterson was not the medical director of Zodiac, nor had he any supervision over the physical therapist who actually rendered the services. *In short, the services billed were plainly not "covered" services, and the Government thus paid on the basis of the false claims presented.*

*Id.* (emphasis added). Consequently, the Fifth Circuit upheld the judgment in favor of the government, which consisted of an award double the amount of the sums paid by Medicare on the false claims, plus penalties. *Id.* at 49, 55.[6]

As in *Peterson,* Mackby, a non-physician, was not eligible to bill Medicare, so he used the identification of a qualified physician-relative to submit those claims. His contention that the Government did not suffer any damages because Medicare would have paid for these services had the patients gone elsewhere for treatment completely misses the point. *The Asher Clinic was not entitled to receive funds from Medicare;* the only reason the clinic received any monies was through the use of a PIN belonging to a physician who was qualified to submit such a claim. Thus, the Court agrees with the Government that it suffered direct damages in the amount of $331,078.

6. The FCA was amended in 1986 to permit    the imposition of treble damages.

In an attempt to distinguish *Peterson*, Mackby argues subsequent amendments to Medicare in 1972 render that opinion inapposite. (Def.'s Reply at 5.) Specifically, the regulations then in effect in *Peterson* specified that Medicare would only reimburse claims for physical therapy if the services were performed by a physician or at the physician's direction. Mackby contends that the basis of the false claim charge in *Peterson* was · the fact that a physician certified to Medicare that he performed services which he, in fact, did not perform or supervise. (*Id.* at 6–7.) However, the regulations have since been amended such that a physical therapist may now perform those services. Thus, Mackby emphasizes that unlike *Peterson*, all of the claims he caused to be submitted were actually covered by Medicare, in contrast to the claims in *Peterson*, which were not. (*Id.*)

In essence, Mackby's argument is nothing more than a transparent attack on this Court's finding of liability which was affirmed and specifically addressed on appeal. In its opinion, the appellate panel stated that:

> Mackby argues that the falsity of the claims submitted by Asher Clinic depends "solely upon the technical interpretation of the instructions for the claims" *because the claims accurately describe physical therapy services that were actually rendered.* However, the fact that physical therapy services were actually rendered does not negate Asher Clinic's false representation that Dr. Mackby performed the services described on the claim forms or that those services were rendered incident to Dr. Mackby's supervision. It is the representation of Dr. Mackby's involvement that is "false," and that falsity is sufficient to satisfy the first element of an FCA claim. *See Peterson*, 508 F.2d at 52 (a Medicare claim may be false even if services were provided).

*Mackby*, 261 F.3d at 827. Thus, whether or not the claims could have been eligible for reimbursement is irrelevant. Under the regulations applicable to Mackby, physical therapy services could only be reimbursed by Medicare Part B if rendered by a physician, incident to a physician's services, or by a qualified PTIP. As in *Peterson*, since Mackby was not qualified to submit claims to Medicare, he used false information (i.e., his father's PIN) to make it appear that the services in question were eligible for Part B reimbursement. The Court therefore finds no merit to Mackby's attempt to distinguish *Peterson* nor with respect to his assertion that the Government sustained no harm as a result of his violation of the FCA.

**D.** *Gravity of the Offense Relative to the Amount of the Judgment*

The fourth and final *Thurman* factor counsels the Court to consider the amount of the forfeiture relative to the gravity of the offense. 175 F.3d at 1309. In an attempt to minimize the seriousness of his misdeeds, Mackby characterizes his conduct as a "mere billing *technicality*" or "alleged billing *discrepancy*" which was limited to a "single 'misrepresentation'" involving "*arcane* Medicare billing rules . . . ." (Def.'s Opening Brief at 1, 6, 13 (emphasis added).) He also repeats his assertion that the Government suffered no monetary loss since the Government would have paid another clinic for the physical therapy services in lieu of the Asher Clinic. (Def.'s Reply Brief at 8.) Given the allegedly minor nature of his transgressions, Mackby argues that "any penalty in excess of $5,000.00 in this case would constitute an excessive fine." (Def.'s Opening Brief at 12–13.) The Court disagrees.

The prevalent theme of Mackby's briefs is his belief that he should never have been accused of any wrongdoing by the Government and that he should not have been

found liable under the FCA. (*Id.* at 9, 11.) [7] Mackby goes so far as to request that this Court "consider, as a threshold matter, whether, under the circumstances of this case, *this action should have been the subject of an action under the False Claims Act in the first place.*" (*Id.* at 6 (emphasis added).) In other words, Mackby believes that the judgment is excessive because the Government should not have pursued this action against him. This contention is meritless. The matter of Mackby's culpability has been finally resolved by the Ninth Circuit. *Mackby,* 261 F.3d at 829. Consequently, the "law of the case" doctrine forecloses reconsideration of Mackby's liability. *See Vizcaino,* 173 F.3d at 719.

Moreover, despite Mackby's protestations to the contrary, his submission of false claims to the United States is a *serious* matter. *See In re Commonwealth Cos., Inc.,* 913 F.2d 518, 526 (8th Cir.1990) ("In view of the case law identifying the purposes of the FCA and the statute's legislative history, we conclude that civil actions by the government to enforce the FCA serve to inflict the 'sting of punishment' on wrongdoers and, more importantly, deter fraud against the government, *which Congress has recognized as a severe, pervasive, and expanding national problem.*") (emphasis added). It is also important to note that Mackby's actions have undermined the public's confidence in the Government's ability to manage its programs. *See U.S. ex rel. Rosales v. San Francisco Hous. Authority,* 173 F.Supp.2d 987, 1019 (N.D.Cal.2001) (noting that the government's harm in an FCA case is not "easily measurable in dollars" since "fraud erodes public confidence in the government's ability to efficiently and effectively manage its programs.") (quoting S.Rep.

No. 99–345, 99th Cong., 2d Sess. 3, reprinted in 1986 U.S.Code Cong. & Admin. News 5268). Based on the record presented, it is clear that Mackby engaged in a course of deceit which involved the submission of thousands of false claims over the course of four years. As the Ninth Circuit recognized in its opinion, Mackby acted "in reckless disregard or deliberate ignorance" of Medicare requirements and falsely represented himself to be a physician-run practice in order to avoid the Medicare payment cap. *Mackby,* 261 F.3d at 828–29.

The Court further finds that the full amount of the judgment previously imposed by the Court is necessary and appropriate for purposes of deterrence. *Id.* at 831 (directing this Court consider "whether a fine as large as that imposed . . . is required to achieve the desired deterrence"). Mackby claims that a minimal fine is sufficient for purposes of deterrence since he is no longer in the health care business, has not been gainfully employed since the inception of this action, and because "[t]he consequences of his action in this case continue to haunt him independent of the amount of the money judgment." (Def.'s Reply at 16.) Aside from the paucity of evidence to support these assertions, Mackby's argument rings hollow given his steadfast denial of any wrongdoing, notwithstanding this Court's and the Ninth Circuit's determination to the contrary. Mackby's unwillingness to assume responsibility for and accept the consequences of his actions underscores the need and propriety of the instant judgment. *Cf., Brown & Williamson Tobacco Corp. v. Jacobson,* 827 F.2d 1119, 1142 (7th Cir.1987) ("because the purpose of punitive damages is deterrence, the jury was entitled to consider evidence of post-verdict

---

7. This fact is underscored by Mackby's consistent presentation of terms such as "offense," "violation," "misrepresentation" and "wrong-

doing" in quotation marks, as if he has done nothing wrong and is simply being victimized by the Government. (*Id.* at 1, 2, 10, 13.)

recalcitrance in determining the punitive damage award."). Mackby's assertion that a $5,000 fine is sufficient "as an adequate deterrent" is absurd given the seriousness of this matter and his attitude.

### E. *Request for an Offset*

Finally, Mackby contends that he is entitled to an offset in the amount of $100,000 for services which the Asher Clinic provided to Medicare patients in 1996. (Def.'s Opening Brief at 13–14.) After Medicare uncovered and contacted the Asher Clinic regarding the improper billings under Medicare Part B, Mackby expended considerable effort to have the clinic meet the conditions of Medicare eligibility for a rehabilitation agency so that it would no longer be required to bill under Medicare Part B. (FFCL ¶ 20.) On June 4, 1996, Mackby submitted a request ed to have the Asher Clinic certified as a rehabilitation clinic. (*Id.*) Medicare grant ed the request on September 13, 1996. (*Id.*) Thus, Mackby maintains that he is entitled to an offset for services rendered to Medicare patients during the time period after which he ceased using his father's PIN and up to the date of the clinic's certification as a rehabilitation agency. (Def.'s Opening Brief at 13–14.)

The Court finds that Mackby is not entitled to any offset. As the Government correctly points out, Mackby is, in effect, seeking reimbursement for services rendered to Medicare patients during a timeperiod in which he had no right to such monies. Mackby counters that the clinic is entitled to these funds since from 1992 until the clinic was certified as a rehabilitation agency in 1996 it was a "supplier" of health care services. However, as discussed above, this contention is not properly before the Court.[8] In any event,

Mackby's claim for reimbursement is beyond the scope of this action. To the extent he is seeking an offset based on claims which were never submitted to Medicare, Mackby must first submit those claims to Medicare and exhaust his administrative remedies. *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 12–13, 120 S.Ct. 1084, 146 L.Ed.2d 1 (2000). However, there is no evidence that he has exhausted such remedies.

### CONCLUSION

Mackby's actions amount to much more than a "billing technicality"-they reflect a serious, ongoing, and deliberate course of conduct designed to obtain Medicare payments for which he was not qualified. Mackby's continued refusal to assume responsibility for his misconduct underscores the need for a sizeable judgment to deter him and others from engaging in similar conduct. In sum, the Court finds that neither the civil penalty nor the treble damage award, either individually or collectively, is grossly disproportionate to the gravity of Mackby's violation of the FCA. The Court therefore concludes that the judgment previously entered in this action does not violate the Excessive Fines Clause of the Eighth Amendment. Accordingly,

IT IS HEREBY ORDERED THAT the judgment against Mackby in the amount of $729,454.92 previously entered by this Court on March 10, 1999 shall remain as previously entered. The Clerk shall close the file and terminate any pending matters.

IT IS SO ORDERED.

---

8. In addition, none of the cases cited by Mackby involve the FCA, and hence, are inap-   posite.