RICHARD SIMMONS vs. BARBARA SMITH.

Bristol.  May 10, 1985. — September 18, 1985.

Present: PERRETTA, KAPLAN, & KASS, JJ.

*Trust*, Resulting trust.  *Estoppel.  Laches.*

At the trial of an action brought by a plaintiff against his sister to recover on a promissory note and a counterclaim by the sister to establish that her deceased parents held title to certain property as beneficial owners, rather than as trustees for the plaintiff, and that, consequently, she had inherited an interest in the property from them, there was sufficient evidence to warrant the jury's conclusion that a resulting trust was created in favor of the plaintiff when he purchased the property in part with money borrowed from his parents and took title with his parents as tenants in common. [778-779]

At the trial of an action in which a sister opposed her brother's contention that she had no interest in certain property, title to which was held in the names of her brother and their deceased parents, the sister failed to establish that the brother was barred by principles of laches or estoppel where there was nothing to show that she was disadvantaged in any way by her brother's failure for a number of years to inform her that she had no interest in the property. [779-780]

CIVIL ACTION commenced in the New Bedford Division of the District Court Department on January 28, 1981.

On transfer to the Superior Court Department the case was tried before *Robert L. Steadman*, J.

*Donald J. Fleming* for the defendant.

*Charles A. Murray, III*, for the plaintiff.

PERRETTA, J.  Central to the various claims asserted in the pleadings of the parties, brother and sister, is the issue whether their mother and father, both deceased, held title to certain premises located in New Bedford as beneficial owners or as trustees for the brother. This question whether "[t]here did exist a resulting trust in favor of" the brother was put to a jury

and, upon their affirmative response, judgment in the brother's favor entered on all the claims. We affirm.

I. THE FACTS.

The following evidence was put before the jury. Between the years 1957 and 1962 the brother operated a service station on the property in question as dealer for the Atlantic Richfield Company (Atlantic). In 1960, the brother began negotiating with Atlantic for the purchase of the premises. An agreement was reached, and the brother made a down payment of $10,500 to Atlantic. He borrowed $8,500 from his parents to make that payment. On November 5, 1962, he and his parents took title to the property as tenants in common, granted a mortgage to the Brookline Savings Bank, and signed a mortgage note in the amount of $11,200. Thereafter, the brother operated the service station under an agreement with Atlantic. He conducted the business under the name of Dick's Atlantic, Inc. When the business was expanded in 1965 to include the buying, selling, leasing, and repairing of automobiles, a second corporation was formed, West End Motors, Inc. Although the brother and parents were officers and directors of the two companies, the brother was the treasurer and sole shareholder of each corporation. Additionally, the incorporators of each corporation signed a "Waiver of Notice," which provided that they did "waive notice of the time and place at, and of the purpose for, which any meeting of the Corporation has been, or shall be called or held."[1]

Between the time of the purchase of the premises until April of 1967, the brother reduced the loan from his parents by approximately $5,000. He also made the payments on the mortgage note, and he was responsible for the bills relating to the property, such as water and taxes.

Shortly after the mother's death in April, 1967, the father lent the brother $10,000 to pay off the mortgage note. That note was cancelled and the mortgage discharged in November

---

[1] The brother, father and mother were the incorporators of Dick's Atlantic, Inc., and the brother, father and one Jack London were the incorporators of West End Motors, Inc.

of 1967. Thereafter, the brother continued to repay the father until July of 1976, when the father died.

The sister's claimed interest in the property originates with the death of her mother, who died intestate and whose one-third interest in the property passed to the father, the brother, and the sister. See G. L. c. 190, § 1 (2), as amended through St. 1956, c. 316, § 1, and as in effect at the time of the mother's death. The father died testate, leaving all his property, real and personal, to the brother and sister in equal shares. The first mention made by the sister of an interest in the property was in June, 1980, and came about in the following manner. By a note dated January 1, 1978, the brother lent the sister $12,000, which, according to the terms of that note, was payable upon demand. Some time in May, 1980, she told her brother that she wanted to sell her share of the property and asked that he share in the cost of having an appraisal done. The brother agreed to contribute to an appraiser's fee, and no more was said about the property until November.

Exhibits included in the record appendix indicate that in November of 1980 a dispute arose between the brother and sister concerning her use of the money she had borrowed from him in 1978 as it related to her failure to make any repayment. Matters came to a head when the brother, in November, notified the sister that he was demanding payment under the terms of the note she had signed. The sister responded that she did not have the money available but that she was prepared to sell her interest in the garage. The brother repeated his demand for payment, adding that the garage was not a part of the dispute between them. The sister reiterated her original position, that the note would be paid when the "matter of my share of the gas station is settled."

On January 28, 1981, the brother brought a complaint on the note, and the sister denied liability, asserting various affirmative defenses and a set-off due to her supposed share of the garage. She also sought an accounting from the brother for his use of the property. To this claim the brother answered that the parents' interest in the property, and, hence, the sister's interest, was as trustees and that he (the brother) was the sole

beneficial owner. The final rally was the sister's response that the brother's claim of resulting trust was barred by the doctrine of laches.

At the close of all the evidence, the judge directed a verdict for the brother on the sister's note and put the issue of the resulting trust to the jury. See Mass.R.Civ.P. 39(c), 365 Mass. 802 (1974).

2. THE RESULTING TRUST.

The sister makes diffuse arguments on appeal concerning the sufficiency of the brother's evidence of the existence of a resulting trust. She claims that it was error to deny her motions for a directed verdict and for judgment notwithstanding the verdict. In making these contentions, the sister points to the evidence she produced to defeat the brother's claim of sole ownership. The argument misses the mark, as it deals with issues of credibility rather than the sufficiency of the brother's evidence to support his claim.

A resulting trust will be found in favor of one who "buys and pays for real estate, but the conveyance of the title is to another." *Howe* v. *Howe*, 199 Mass. 598, 600-601 (1908). See *Murphy* v. *McKenzie*, 1 Mass. App. Ct. 553, 555 (1973). This well-established rule has application even where all or part of the purchase price was borrowed from the title holder. See *Gerace* v. *Gerace*, 301 Mass. 14, 18 (1938). There is a presumption that "he who supplies the purchase price intends that the property bought shall inure to his own benefit and not that of another, and that the conveyance is taken in the name of another for some incidental reason." *Quinn* v. *Quinn*, 260 Mass. 494, 501 (1927). See also *Carroll* v. *Markey*, 321 Mass. 87, 88-89 (1947); *Caron* v. *Wadas*, 1 Mass. App. Ct. 651, 655 (1974).

Our review of all the evidence leads us to conclude that a verdict for either the brother or the sister could have been returned by the jury, depending only upon how issues of credibility were resolved. It may well have been the numerous cancelled checks from the brother to the mother and father and the various corporate documents that tipped the scales in the brother's favor. In any event, we see no error in the judge's

denial of the sister's motions for a directed verdict and for judgment notwithstanding the verdict.

3. THE SISTER'S AFFIRMATIVE DEFENSES.

In her answer to the brother's claim for a resulting trust, the sister affirmatively set forth the defense of laches, but made no mention of the doctrine of estoppel. See Mass.R.Civ.P. 8(c), 365 Mass. 750 (1974). See also *Building Inspector of Lancaster* v. *Sanderson*, 372 Mass. 157, 162 (1977). Her failure to plead estoppel affirmatively does not, however, preclude our consideration of her argument on that issue provided that the defense was "tried by the express or implied consent of the parties and there is no prejudicial surprise." *National Med. Care, Inc.* v. *Zigelbaum*, 18 Mass. App. Ct. 570, 578-579 (1984). Although the elements of estoppel differ somewhat from those of laches (see *DeSisto's Case*, 351 Mass. 348, 351-352 [1966]; *Three Sons, Inc.* v. *Phoenix Ins. Co.*, 357 Mass. 271, 278 [1970]), we conclude that, in the circumstances of the present case, the sister's two claims are so similar that our review of them will cause no "prejudicial surprise" to the brother.

There is yet another procedural problem to dispose of before reaching the substance of the sister's contention. The record-appendix gives no indication that either party filed a motion to frame jury issues under rule 39(c). However, as earlier mentioned, the judge put to a jury, without objection from the parties, the question whether a resulting trust in the brother's favor existed. In so doing, the judge did not put either defense, laches or estoppel, before the jury for their consideration with the resulting trust question. From this state of the record, we surmise that the judge reserved for himself decision on the sister's equitable defenses should the jury's verdict make it necessary to consider her claims. See, e.g., *Westfield Sav. Bank* v. *Leahey*, 291 Mass. 473, 475 (1935).

In entering judgment for the brother, the judge made no findings of fact under Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974), on the sister's defenses. But see *Lynn* v. *Nashawaty*, 12 Mass. App. Ct. 310, 314-315 (1981). We think it unnecessary, however, to remand the case for findings of fact on the

sister's defenses because her claims do not involve conflicts in the evidence or questions of credibility. See *Bruno* v. *Bruno*, 384 Mass. 31, 35-36 (1981). Further, the sister asks in her brief that we not remand the matter because we are "in the same position as the trial court." Thus, she concedes an absence of conflict in the evidence on her defenses.

To establish the defense of either estoppel or laches the sister was required to show that she was disadvantaged in some manner by the brother's alleged failure to inform her that she had no interest in the property. See *Capozzi's Case*, 4 Mass. App. Ct. 342, 347 (1976) (estoppel); *Myers* v. *Salin*, 13 Mass. App. Ct. 127, 138-140 (1982) (laches). We do not think that the sister met her burden of proof.

If the sister suffered any loss (financial or otherwise) or prejudice as a result of a belief that she had an interest in the property, she failed to present any evidence of it. Her contention that the brother's delay in asserting his claim caused her the loss of her father's testimony must fail as it proceeds on the assumption that any such testimony would have been favorable to her and would have changed the result. We cannot make such an assumption. See *Three Sons, Inc.* v. *Phoenix Ins. Co.*, 357 Mass. at 278-279.

4. Conclusion.

The judgment on the counterclaims sets out a time schedule by which the sister was to convey her interest in the real estate to the brother. That schedule has not been met because of the sister's appeal from the judgments. Accordingly, the matter is remanded to the trial court for setting of a new date by which the sister is to convey her interest to the brother. In all other respects, the judgments are affirmed.

*So ordered.*