Robert R. Lewis, administrator, *vs.* Betty L. Mills.

No. 90-P-554.

Middlesex. December 6, 1991. - June 15, 1992.

Present: Brown, Kass, & Gillerman, JJ.

Further appellate review granted, 413 Mass. 1104 (1992).

*Trust*, Resulting trust, Constructive trust. *Real Property*, Ownership.

At the trial of an action by the administrator of a decedent's estate against a woman to whom the decedent had become engaged and whom he had planned to marry, seeking a determination that the defendant had obtained by fraud her interest in the house the couple had purchased as joint tenants and that she held title in trust for the plaintiff, there was insufficient evidence to warrant the judge's finding that a resulting trust was created in favor of the decedent's estate. [664-666]

At the trial of an action by the administrator of a decedent's estate against a woman to whom the decedent had been engaged and whom he had planned to marry, seeking a determination that the defendant had obtained by fraud her interest in the house the couple had purchased as joint tenants and that she held title in trust for the plaintiff, the judge's finding that a constructive trust was created in favor of the decedent's estate was clearly erroneous inasmuch as there had been no showing that the legal title to the property was obtained by fraud at the time of the transfer or in violation of a fiduciary relationship. [666]

Civil action commenced in the Middlesex Division of the Probate and Family Court Department on June 23, 1986.

The case was heard by *John S. Macdougall, Jr.*, J.

*Floyd H. Anderson* for the defendant.

*Judith A. Kelley* for the plaintiff.

Brown, J. In April, 1979, Robert C. Lewis (the decedent) and the defendant Betty L. Mills became engaged and planned to marry in 1980. They planned to sell their respective houses[1] (both in Billerica), to pool the proceeds from the sale of each, and to apply the total toward the purchase of a

[1]The decedent had purchased his first wife's interest in their former marital residence in 1979.

house together. On October 21, 1979, the decedent and Mills, as buyers, entered into a purchase and sale agreement regarding a single family house located at 87 Treble Cove Road in Billerica (the locus), and the decedent made a deposit or down payment of $1,900 on the locus.[2]

The decedent then sold his house and lot for $49,500, netting proceeds of $26,844.53 on December 14, 1979. On that same date, the decedent and Mills purchased the locus for the sum of $64,900, obtaining title thereto as joint tenants with right of survivorship and recording their deed in the registry of deeds. In addition to the $1,900 deposit, the decedent paid $26,629 of the purchase price for the locus, that amount being derived almost entirely from the sale of his former home. The decedent and Mills obtained additional funds to buy the locus by borrowing from a bank $38,000 on a first mortgage loan against the locus.

At the time of the conveyance, the decedent and Mills agreed to share equally in the costs of acquiring and maintaining the locus. Mills, however, advanced no money for the deed to the locus at the closing,[3] and, when she sold her former house, instead of applying the net proceeds (approximately $20,000) toward the purchase of the locus (or to reduce the mortgage) as she had promised,[4] Mills used the proceeds to make several personal investments and to purchase furniture for her children (from a former marriage) and an automobile for herself, taking title in her name individually. She gave none of the proceeds of the sale of her

---

[2]Mills had signed an offer to purchase the locus (dated October 15, 1979), and the broker acknowledged receipt of a deposit of $100 from her, which, arguably, was a part of the purchase price, albeit the only portion. She began payments on the note and mortgage after the decedent's death.

[3]The trial judge found that Mills offered no written documentation to support her claim that she had paid $3,000 of the purchase price. She testified that she could not prove that she made a contribution to the purchase price (other than the $100 deposit), nor could she produce any documentary evidence of payments made on the mortgage from 1979 through May, 1986. Mills does not challenge these findings on appeal.

[4]The decedent was angry because Mills did not use the proceeds from the sale of her home to reduce the mortgage, despite their agreement.

home to the decedent, and none of the proceeds was used to reduce the mortgage.

From the time of the purchase of the locus until his death in May, 1986, the decedent made all payments of principal and interest on the note and mortgage and paid most, if not all, of the household expenses while Mills and her children lived with him. The decedent also paid all property taxes and utility bills and assumed all costs of maintenance on the locus from 1979 until his death.[5]

Mills never did marry the decedent. They lived together at the locus with her children until April, 1983. At that time, Mills and her children left because she had quarrelled with the decedent over the children's discipline. Mills acknowledged that the decedent "did not ask" her to leave. While she lived at the locus, Mills drove a school bus and earned $100 to $150 weekly; the decedent earned three times more income.[6]

From the time she left the locus in April, 1983, to the time of the decedent's death in May, 1986, Mills made no contribution toward the payment of any expenses regarding the locus.[7] From October or November, 1985, to May, 1986, Mills did not see or have any contact with the decedent, although, prior to his death, the decedent demanded of her several times that she transfer her interest in the locus to him, but all the while steadfastly refused to offer any money to her to do so. Also, close to the time of his sudden death, the dece-

[5]The judge found that, although Mills claimed that she had written monthly checks to the decedent for payment of one-half of the mortgage, she was only able to produce eight checks for the three-year period, one of which indicated on the memo portion that it was for "vacation." She was unable to produce any checks regarding her alleged payment of house expenses for the years 1979 through 1985 and the first five months of 1986. There was evidence that she did pay monthly for food for herself and her family, and for telephone expenses.

[6]The judge made a series of findings which demonstrate that the decedent, a "stingy" man, did not rely upon Mills regarding financial matters, and in fact paid "careful" attention to his monetary affairs, particularly those concerning the locus.

[7]In 1985, however, the decedent and Mills, who were no longer living together, refinanced the mortgage because the entire principal of the loan became due and payable.

dent was gathering his financial records to buttress his claim of sole contribution to the purchase price of the locus.[8]

Within one hour of the decedent's death, Mills took possession of the locus and all of its contents.[9] She made the mortgage payments from June, 1986, to the time of trial. She also leased the locus to tenants for seven months at $900 per month.

The plaintiff commenced this litigation in the Probate Court on June 23, 1986, seeking (as is here material) a determination that Mills had obtained her interest in the locus by fraud and that she held title in trust for the plaintiff. In her answer, Mills pleaded the Statute of Frauds.

After trial, the judge ruled that the oral agreement between the decedent and Mills regarding the purchase of the locus was never reduced to writing and, therefore, violated the Statute of Frauds.[10] He went on to find, based on a preponderance of the evidence, that Mills held title to the locus "as a mere convenience" and that both a constructive trust and a resulting trust had been created in favor of the decedent's estate. The judge further found on the evidence that Mills did not carry out the terms of her oral agreement with the decedent to purchase the locus by a joint contribution of funds in substantially equal proportions, that Mills owed a fiduciary obligation to the decedent to carry out that agreement, and that Mills was in breach of that obligation. The judge also found that there was no evidence of a gift by the decedent to Mills of an interest in the locus, and that, if he intended a conditional gift, it had failed. The judge concluded that Mills would be unjustly enriched if she were allowed to acquire title to the locus.

---

[8]At the time of his death, the decedent was not engaged to Mills and had no personal relationship with her, but was engaged to another woman with whom he lived at the locus from March, 1986, to his death on May 31, 1986.

[9]The parties' dispute as to various elements of the decedent's personal property, decided in favor of the plaintiff below, is not an issue on appeal.

[10]Although we do not reach that question, we think that determination is far from clear.

Judgment was entered declaring that Mills held her interest in the locus pursuant to a constructive or resulting trust and ordering Mills to execute a deed conveying her interest to the plaintiff. Mills appealed.[11]

We focus on the plan, not on the problems encountered in carrying out the plan. A resulting trust can only "arise" — to use the traditional terminology — if *from the outset* the person who " 'supplies the purchase price *intends* that the property bought shall inure to his own benefit and *not that of another*, and that the conveyance is taken in the name of another for some incidental reason [emphasis supplied].' " *Simmons* v. *Smith*, 20 Mass. App. Ct. 775, 778 (1985), quoting from *Quinn* v. *Quinn*, 260 Mass. 494, 501 (1927). "[N]othing done after the completion of the purchase could affect the creation of the trust." *Checovich* v. *Checovich*, 339 Mass. 71, 74 (1959). See *Bohaker* v. *Koudelka*, 333 Mass. 139, 142 (1955) ("subsequent payments cannot create [a resulting trust] unless . . . they were the contemplated consideration for the conveyance"). See also *Quinn* v. *Quinn*, 260 Mass. at 503.

The plan here is obvious: A man and a woman sought to buy a house together in anticipation of their forthcoming marriage. Agreeing beforehand to share equally in the costs of acquiring and maintaining the locus, they took title to the house as joint tenants, a scenario which does not seem to be out of the ordinary and appears quite consistent with their mutual intentions. Taking title in this way is a manifestation of an intention to create undivided beneficial interests in the locus. See Restatement (Second) of Trusts § 441 comment e (1957); Scott, Trusts § 441.4 (Fratcher 4th ed. 1989). Compare *McPherson* v. *McPherson*, 337 Mass. 611, 614 (1958) (husband's testimony that he purchased home for himself and his wife and that he understood that, in taking title as tenants by the entirety, property would pass to her at his

---

[11]As the plaintiff did not cross-appeal, he is precluded from recovering such rental income as he may have been entitled to from the locus while it was in the defendant's possession. See *Fortin* v. *Ox-Bow Marina, Inc.*, 408 Mass. 310, 323 (1990).

death established that it was husband's intent at the time of the conveyance that the wife should take a beneficial interest in the property). The probate judge ignored this agreement to share equally the cost of acquiring the locus.[12] It is also significant that, while only one party provided cash for the down payment, both parties were signatories on the initial mortgage loan (as well as the refinancing of that mortgage) used for the purchase price.[13] See *McPherson* v. *McPherson*, 337 Mass. at 614 (each party obligated to same extent as other to repay mortgage). Compare *Williams* v. *Commercial Trust Co.*, 276 Mass. 508, 517 (1931) (all funds expended came from "money belonging to or credit lent to" one party); *Gerace* v. *Gerace*, 301 Mass. 14, 18 (1938) (party signed mortgage as a convenience — no obligation to pay — deemed "a loan of credit"); *Saulnier* v. *Saulnier*, 328 Mass. 238, 240 (1952) (only the party that was "primarily liable" on mortgage "paid anything"); *Bartula* v. *Bartula*, 6 Mass. App. Ct. 907, 908 (1978) (husband alone signed mortgage, but wife also assumed the obligation of the mortgage and contributed to payments made toward it, a resulting trust arose in her favor of one-half interest).

Although it may be argued that a resulting trust may be found even where the payor takes title in the names of him-

---

[12]*Murphy* v. *McKenzie*, 1 Mass. App. Ct. 553 (1973), does not hold otherwise. In that case, property with a purchase price of $40,000 was conveyed to the defendant. The purchase price consisted of $10,000 from the plaintiff and $30,000 from the proceeds of a mortgage of the property given by the defendant to a bank. In finding a resulting trust arose for the plaintiff, this court noted that the plaintiff agreed "to hold 'himself responsible for the mortgage payments.' The defendant's obligation to the bank was, thus, in effect, a loan of credit to the plaintiff, the actual purchaser. The transaction between the plaintiff and the defendant stands no differently from a loan of money from the defendant (the grantee of the record title) to the plaintiff, on whose behalf the defendant took title, to enable the plaintiff to pay the purchase price." *Id.* at 555-556.

[13]Limiting the situations in which a resulting trust is employed and not rescuing every situation of perceived inequity or unjust enrichment, should discourage litigation by disgruntled parties who seek to have their deals recharacterized. Finding a resulting trust in this case would be an example of such recharacterization and would in effect create an antenuptial agreement where there was none.

self and another jointly if it appears that a gift was not intended, see Scott, Trusts § 441.4, at 168, that result is justified only where there is a finding that there was no intention on the part of the payor to create any beneficial interest in the other grantee. See and compare *Simmons* v. *Smith*, 20 Mass. App. Ct. at 778 (although parents took title with son as tenants in common, there was no intent that they be beneficial owners). Nothing has been made to appear here as to why the parties would have taken the property as joint tenants if their true intention was to have the entire beneficial interest go to the decedent. Contrast *Murphy* v. *McKenzie*, 1 Mass. App. Ct. 553, 555 (1973) (plaintiff "did not take title in his own name because he did not want his wife to reach the property for her support . . . and . . . he wanted to avoid an Internal Revenue Service lien on the property").

As to a constructive trust, the judge's findings are clearly erroneous, as there has been no showing that "the legal title to the property was obtained by fraud [at the time of the transfer] or in violation of a fiduciary relation." *Nessralla* v. *Peck*, 403 Mass. 757, 762 (1989), and cases cited. See also in this regard *Hatton* v. *Meade*, 23 Mass. App. Ct. 356, 363-365 (1987).

Although we do not decide where the equities lie here, it would appear that an equitable solution may be developed from the judge's general findings that Mills "[d]id not carry out the terms of her oral or other agreement in 1976 between her and . . . the decedent for the purchase of [the locus] by a joint contribution of funds in substantially equal proportions," that Mills owed a fiduciary obligation to the decedent to carry out that agreement, and that Mills was in breach of that obligation. The one-sided payments by the decedent could be viewed as *loans* to Mills for her share of the purchase price, taxes, and mortgage payments. These "loans" have never been repaid and could be said still to be owed to the decedent's estate. See Restatement (Second) of Trusts § 445 (1957). There were no findings, however, by the trial judge as to any loans (and the complaint made no such

claim). We set out in the margin merely one possible roadmap the trial judge could follow on remand.[14]

The judgment is vacated, and this matter is remanded to the Probate Court for further proceedings not inconsistent with this opinion.

*So ordered.*

---

[14]First, the judge may allow a motion to amend the complaint to conform to the evidence. Upon so doing, he could make findings as to the amounts paid by the decedent compared with those made by Mills and, if he finds (as before) that no gift was intended, permissibly enter a judgment for the estate in the amount of such a loan as derived from the calculations, with appropriate interest. Mills would retain title to the locus as survivor under the joint tenancy arrangement.