**UNITED STATES of America,
Plaintiff,**

v.

**REAL PROPERTY, BUILDINGS, APPURTENANCES AND IMPROVEMENTS Located at 221 Dana Avenue, Hyde Park, Massachusetts, Defendant,**

**Kathleen Gass, Claimant.**

**No. Civ.A. 98–10205–PBS.**

United States District Court,
D. Massachusetts.

Jan. 3, 2000.

erty to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. Mr. Gass, the sole owner of the property, committed suicide in January of 1998, shortly after he was arrested for cocaine distribution. Kathleen Gass seeks to retain the property, in which she lives with the couple's 7 year old son, asserting that she is an "innocent owner" and, alternatively, that forfeiture of the property would constitute an excessive fine in violation of the Eighth Amendment.

A jury trial commenced on October 18, 1999. Three witnesses testified: Kathleen Gass, United States Customs Service Special Agent David McClanahan, and United States Drug Enforcement Administration Special Agent Robert Allen. At the close of evidence, the United States moved for a directed verdict pursuant to Fed.R.Civ.P. 50. The claimant has also moved for entry of judgment pursuant to Fed.R.Civ.P. 58. Over the claimant's objection, the Court dismissed the jury, as there were no factual disputes to resolve, and ordered additional briefing.

For the reasons stated below, the Plaintiff's Motion for Directed Verdict is **ALLOWED.** The Claimant's Motion for Entry of Judgment is **DENIED.**

Shelby Wright, United States Attorney's Office, Boston, MA, for U.S.

William F. Spallina, Newton, MA, Brian McMahon, Brian M. McMahon, Boston, MA, for Kathleen B. Gass, Defendant.

### MEMORANDUM AND ORDER

SARIS, District Judge.

### *INTRODUCTION*

Plaintiff, the United States of America, seeks forfeiture of the defendant property (the "property"), a two-family residential dwelling, pursuant to 21 U.S.C. § 881(a)(7), alleging that the claimant's late husband, William Gass, used the prop-

### *FACTS*

The evidence at the close of trial disclosed the following undisputed facts.

In early 1997, the Drug Enforcement Administration ("DEA") and United States Customs Service began investigating William Gass for suspected cocaine distribution. Between February and December of 1997, agents from the DEA and Customs Service worked with a confidential informant to arrange drug buys with Mr. Gass at the property. Mr. Gass operated a taxi cab business out of his home on the property. The office for the taxi cab business was in a separate apartment unit on the first floor.

On four different occasions, the confidential informant met with Mr. Gass inside

the property and made controlled purchases of cocaine from Mr. Gass. Controlled purchases were conducted on February 3, February 20, March 12, and May 2, 1997. On each of these occasions, the confidential informant, who was wired with a transmitting device, was searched by law enforcement agents prior to meeting with Mr. Gass, was given funds by the agents to make the drug purchases, and was surveilled by agents as he approached the property and left the property. The agents monitored the recording device. Because of the location of the house and driveway, the agents did not actually see the confidential informant enter the house. The confidential informant then met with the agents, turned over various quantities of cocaine, and described how Mr. Gass retrieved cocaine from the office area of the property, and weighed the cocaine into bags in the kitchen area of this office on the first floor. Another transaction with Gass took place on October 23, 1997.

On January 8, 1998, based on the controlled buys and informant's statements, Mr. Gass was arrested and charged with cocaine distribution; later that day, agents executed a search warrant on the property. Mr. Gass confessed and accompanied the agents to the property, where he retrieved and turned over to agents 490 grams of cocaine and $59,000. Agents also discovered a white bucket and scale which had been used, according to the confidential informant, to weigh the cocaine. On the day of the search, Mrs. Gass became aware of her husband's cocaine distribution activities.

On January 19, 1998, Mr. Gass executed a will devising all of his property to Kathleen Gass. On January 29, 1998, he committed suicide at the property. The government filed a complaint for forfeiture of the property on February 3, 1998. On February 4, 1998, this Court found that probable cause existed to believe the property was subject to forfeiture, and a monition issued. Kathleen Gass was appointed executrix of her late husband's will on June 22, 1998.

William Gass purchased the property on February 5, 1990, and the deed was issued solely in his name. Kathleen Gass has lived in the home since 1990, and currently resides there with the couple's 7 year old son. William and Kathleen Gass were married on January 8, 1995, but no interest in the property was ever conveyed to Mrs. Gass. Mrs. Gass did not contribute money toward the purchase price or to the mortgage payments before or during their marriage. She contributed to other financial needs of the family, such as food and clothing. Since Mr. Gass's suicide, however, Mrs. Gass has made the mortgage payments on the property and has made improvements to the property. Mrs. Gass has always worked outside the home. For the past ten years, she has been an accountant for the Department of Housing and Urban Development, making $30,000 a year.

The configuration of this two family dwelling is significant. The second floor served as the family home. Mrs. Gass rarely entered the first floor area, and did not have a key to Mr. Gass's office. The cocaine, money, and other instruments recovered by the agents were found in the first floor apartment. On the day he was arrested, Mr. Gass asked to call Mrs. Gass at work prior to the search so that she would not be alarmed by police presence. Indeed, Mrs. Gass did not know of her husband's drug distribution activities prior to January 8, 1998, the date of his arrest.

## STANDARD OF REVIEW

■ A motion for judgment as a matter of law under Fed.R.Civ.P. 50(a) will be granted only in those instances where, after having examined the evidence as well as all permissible inferences drawn therefrom in the light most favorable to the non-movant, the court finds that a reasonable jury could not render a verdict in that party's favor. *See, e.g., Wills v. Brown Univ.,* 184 F.3d 20, 29 (1st Cir.1999);

*Mangla v. Brown Univ.*, 135 F.3d 80, 82 (1st Cir.1998); *Ed Peters Jewelry Co. v. C & J Jewelry Co.*, 124 F.3d 252, 261 (1st Cir.1997); *Bogosian v. Mercedes–Benz of N. Am., Inc.*, 104 F.3d 472, 475 (1st Cir. 1997). The court may not take into account the credibility of witnesses, resolve evidentiary conflicts, nor ponder the weight of the evidence introduced at trial. *See Logue v. Dore*, 103 F.3d 1040, 1043 (1st Cir.1997).

## DISCUSSION

### I. Innocent Owner Defense

■ In a forfeiture action under 21 U.S.C. § 881, once the government demonstrates probable cause to believe that property has been used in violation of federal drug laws, the burden shifts to the claimant to prove, by a preponderance of the evidence, an ownership interest in the property and ignorance of the conduct which gave rise to the forfeiture.[1] *See United States v. $250,000.00 in United States Currency*, 808 F.2d 895, 900 (1st Cir.1987). This is known as the "innocent owner" defense. *See United States v. 116 Emerson Street*, 942 F.2d 74, 80 (1st Cir. 1991).

■ Mrs. Gass's standing as an owner is complicated by the fact that she is proceeding here in three roles: as the executrix of Mr. Gass's estate, as heir under Mr. Gass's will, and as alleged equitable owner of the property. As executrix of Mr. Gass's estate, Mrs. Gass has standing to contest the forfeiture on Mr. Gass's behalf, and stands in the shoes of Mr. Gass as if he were a party to the litigation. *See United States v. 40 Clark Rd.*, 52 F.Supp.2d 254, 256 (D.Mass.1999); *United States v. 5854 N. Kenmore*, 762 F.Supp. 204, 207–08 (N.D.Ill.1991); *United States v. Miscellaneous Jewelry*, 667 F.Supp. 232, 236–37 (D.Md.1987); *United States v.*

*Matheson*, 400 F.Supp. 1241, 1247 (S.D.N.Y.1975). However, with respect to Mr. Gass, an innocent owner defense is a non-starter. Despite his obvious ownership interest, government surveillance established that Mr. Gass was involved in cocaine distribution out of the house. He accompanied agents to the property, was present during the search, and turned over cocaine and a large sum of cash which was stored in the first floor apartment.

■ Mrs. Gass's next argument hinges upon establishing her own independent ownership status. In order to assert the "innocent owner" defense to forfeiture under § 881, a claimant must establish some form of ownership interest in the property. Generally speaking, "the term 'owner' under § 881(a)(6) and (a)(7) has been broadly interpreted to include any person with a recognizable legal or equitable interest in the property seized." *United States v. 92 Buena Vista Ave.*, 937 F.2d 98, 102 (3d Cir.1991), *aff'd*, 507 U.S. 111, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993) (quoting U.S.Code & Admin.News at 9522–23); *see also 116 Emerson St.*, 942 F.2d at 79–80 (finding ample evidence of equitable ownership to support claimant's defense to § 881(a)(7) forfeiture).

During the time preceding her husband's death, Mrs. Gass had neither a legal nor equitable ownership interest in the property. Mr. Gass was the sole title holder of the property, and never conveyed any interest to Mrs. Gass during his lifetime. Under Massachusetts probate law, property owned by each person prior to marriage remains the separate property of that person upon marriage. *See* Mass. Gen.L. ch. 208, § 34. Upon divorce, a court may award the separate property of either spouse to the other. *See id.*

---

**1.** 21 U.S.C. § 881(a)(7) provides for forfeiture of real property used to facilitate commission of a crime involving controlled substances, but provides that "no property shall be forfeited ... to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner."

In the context of forfeiture actions, courts have generally rejected arguments that a right to equitable distribution of marital property confers an equitable or legal ownership interest independent of a divorce proceeding. *See 116 Emerson St.,* 942 F.2d at 79 n. 3 (stating that Rhode Island law dealing with distribution of property interests applies only to the assignments of property interests between husband and wife in divorce proceedings); *United States v. 9844 S. Titan Court,* 75 F.3d 1470, 1478 (10th Cir.1996) (rejecting argument under Colorado law that spouse had current legal or equitable interest in marital property titled in other spouse's name); *United States v. 717 S. Woodward St.,* 2 F.3d 529, 535–36 (3d Cir.1993) (rejecting claimant's reliance, in establishing her ownership interest, on Pennsylvania statute governing equitable division of marital property upon divorce); *United States v. Schifferli,* 895 F.2d 987, 989 n. 1 (4th Cir.1990) (finding that "marital property" does not exist until the filing of marital litigation).

■ Moreover, Mrs. Gass cannot establish an equitable ownership interest under Massachusetts property law. Mrs. Gass has not offered any facts from which this Court could find a resulting trust. A resulting trust typically arises when property is conveyed to one person, and the purchase price is paid by another. *See Nessralla v. Peck,* 403 Mass. 757, 763, 532 N.E.2d 685 (1989) (finding no resulting trust where plaintiff did not contribute toward purchase price of farm). To establish a resulting trust, claimant must prove (1) that the parties intended at the time of the purchase that both would own the property and assume the obligation of the mortgage; (2) that both contributed to the mortgage payments; and (3) that they both therefore furnished the consideration for the purchase of the property. *See Bartula v. Bartula,* 6 Mass.App.Ct. 907,

908, 378 N.E.2d 466 (1978) ("To show a resulting trust, the wife must show that she paid an aliquot share of the purchase price."). "A resulting trust can only 'arise' ... if from the outset the person who supplies the purchase price intends that the property bought shall inure to his own benefit and not that of another, and that the conveyance is taken in the name of another for some incidental reason." *Lewis v. Mills,* 32 Mass.App.Ct. 660, 664, 593 N.E.2d 1312 (1992) (citations and internal quotations omitted); *cf. 116 Emerson St.,* 942 F.2d at 79 (upholding a finding of resulting trust under Rhode Island law upon clear and convincing evidence of wife's mortgage payments and verbal agreement between spouses at the time of the purchase that property would be owned jointly).

■ Here, Mrs. Gass conceded that she did not contribute to the mortgage payments on, or the purchase price of, the property. There was no agreement at the time of the purchase that she would own the property. Her financial contributions toward other expenses of the family (such as food and clothing) are insufficient under Massachusetts law to establish a resulting trust.

Since Mrs. Gass has shown no legal or equitable ownership of the property prior to her husband's death, her final ownership argument stems from her ownership interest which arose at the time of Mr. Gass's death. Mrs. Gass argues that her dower interest, or, in the alternative, her interest as an heir under Mr. Gass's will, provides sufficient ownership interest to entitle her to assert the innocent owner defense. In response, the United States argues that the "relation-back" doctrine[2] embodied in the forfeiture statute vested title to the property in the United States as of February, 1997, the first date of Mr. Gass's alleged illegal activity. Accordingly, under the government's theory, at the

---

**2.** 21 U.S.C. § 881(h) states: "All right, title, and interest in the property described in subsection (a) of this section shall vest in the United States upon commission of the act giving rise to forfeiture under this section."

time of his death, Mr. Gass had no legal interest in the property to convey.

■ The United States incorrectly asserts that legal title automatically vests in the government as of the date of an illegal act. A plurality of the Supreme Court rejected this sweeping interpretation of the relation-back doctrine, and concluded that the government does not have vested title until it obtains a judgment of forfeiture. *See United States v. 92 Buena Vista Ave.*, 507 U.S. 111, 126–27, 113 S.Ct. 1126, 1136, 122 L.Ed.2d 469 (1993). Once a final judgment of forfeiture is entered, the government's title will then "relate back" to the date of the commission of the illegal act. *See id.* at 127, 113 S.Ct. 1126. Under this interpretation of the relation-back doctrine, the Court determined that the innocent owner defense was available to a party who obtained her ownership interest in property after the illegal activity giving rise to the forfeiture had occurred. *See id.* at 123, 113 S.Ct. 1126. The Court reasoned that until there was a judgment of forfeiture, a person with an ownership interest may "invoke any defense available to the owner of the property ..." *Id.* at 127, 113 S.Ct. 1126. The Court went on to hold that protection afforded to post-illegal act transferees is not limited to bona fide purchasers. In fact, the claimant in *92 Buena Vista* was a girlfriend who received money from her boyfriend as a gift, unaware it was drug proceeds, and then used the money to purchase a house. *See id.* at 123, 113 S.Ct. 1126.

Some courts have relied upon the relation-back doctrine in holding that the death of the property owner does not extinguish the government's rights to forfeiture. *See In the Case of One 1985 Nissan 300ZX*, 889 F.2d 1317, 1319 (4th Cir.1989) (holding that because the government's title in forfeitable property vested at the time of the illegal act, a drug trafficker had no interest in the property at the time of his death to pass on to his estate or heirs); *U.S. v. 5854 N. Kenmore*, 762 F.Supp. 204, 208 (N.D.Ill.1991) (same).

However, these cases may be moribund after *92 Buena Vista.*

Mrs. Gass asserts two grounds upon which her ownership interest arose following her husband's death. She first claims a dower interest in the property. Upon claiming dower, a surviving spouse is entitled to a life estate in one-third of the real estate owned by the deceased spouse at the time of death. *See* Mass.Gen.L. ch. 189, § 1. A dower interest must be claimed within six months of the approval of an executor's or administrator's bond, or else it is waived. *See id.*; Sean M. Dunphy, *Massachusetts Practice*, Probate Law and Practice, § 7.1 (1997). Mrs. Gass has not presented evidence that she filed such a claim in a timely manner.

■ As for Mrs. Gass's second source of ownership interest, as the heir named in her husband's will, that interest has not yet vested. Under Massachusetts law, the vesting event is the date of the allowance of the will by the probate court, but the passing of title is deemed to relate back to the date of the testator's death. *See* Mass. Gen.L. ch. 191, § 7; *In re Lonstein v. Rockman*, 950 F.2d 77, 80 (1st Cir.1991) (citing *Union Trust Co. of Springfield v. Nelen*, 283 Mass. 144, 149, 186 N.E. 66 (1933)). There is no evidence that Mr. Gass's will has been allowed by a probate court.

A more fundamental problem, however, undermines Mrs. Gass's claim. Under Massachusetts law, Mrs. Gass has an interest in the property as the heir named in a will yet to receive final probate approval. *Cf. Reardon v. Whalen*, 306 Mass. 579, 580, 29 N.E.2d 23 (1940) ("A share as next of kin in an undistributed estate is property."). However, she possessed no property rights as an heir until the time of her husband's death. *See* Dunphy, *supra*, § 9. At the time she acquired that interest—i.e., the date of Mr. Gass's death—she was aware of the illegal conduct occurring on the property. The United States argues that

this knowledge precludes her from establishing that she is an innocent owner.

In *92 Buena Vista*, the Court declined to resolve the issue of whether a transferee must establish a lack of knowledge at the time of the transfer of the property, or at the time of the illegal act. The Court suggested, in dicta, that "equitable doctrines may foreclose the assertion of an innocent owner defense by a party with guilty knowledge of the tainted character of the property." *92 Buena Vista*, 507 U.S. at 130, 113 S.Ct. 1126. In a concurring opinion, Justice Scalia suggested that post-illegal act transferees with post-illegal act knowledge of the earlier illegal act should prevail when presenting an innocent owner defense. *See id.* at 139, 113 S.Ct. 1126. Since *92 Buena Vista*, courts have divided on the issue. *Compare United States v. 6640 S.W. 48th St.*, 41 F.3d 1448, 1452–53 (11th Cir.1995) (examining claimant's knowledge as of the time of the property transfer, not at the time of the criminal acts); *and United States v. 3 Parcels in La Plata County, Colo.*, 919 F.Supp. 1449, 1457 (D.Nev.1995) (finding that claimant asserting innocent owner defense must establish that at time of acquiring interest he had no knowledge of illegal conduct); *with United States v. One 1973 Rolls Royce*, 43 F.3d 794, 819 (3d Cir.1994) (holding that claimant could establish innocent owner defense if he proved ignorance of illegal acts at the time they took place).

The government argues that allowing a claimant to avoid forfeiture by establishing lack of knowledge at the time illegal conduct occurred would create a major loophole in the forfeiture scheme. Criminals could simply keep family and friends "out of the loop," and then transfer property to them to avoid forfeiture. *See United States v. 6640 S.W. 48th St.*, 831 F.Supp. 1578, 1584 (S.D.Fla.1993); *see also* Anthony J. Franze, Note, *Casualties of War?: Drugs, Civil Forfeiture, and the Plight of the Innocent Owner*, 70 Notre Dame L.Rev. 369, 410 (1994) (arguing that legislative history, common sense, and case law

support the position that post-illegal act knowledge precludes an innocent owner defense).

■ In the context of inheritance, the most rational way out of the relation-back quagmire posed by *92 Buena Vista* is to measure the claimant's knowledge at the time she acquired her property interest as an heir. The relevant point of inquiry, then, is the date of Mr. Gass's death. For sure, this is a somewhat arbitrary point of time: it would defeat an innocent owner defense for an heir who learned one day prior to death of the illegal act, but not an heir who learned one day after death. However, a reading of the tea leaves in *92 Buena Vista* and its progeny suggests that knowledge at the time of transfer will govern the viability of the innocent owner defense.

■ On January 8, 1998, the date of Mr. Gass's arrest, Mrs. Gass became aware of her husband's drug distribution out of the first floor apartment in the property. On January 19, 1998, Mr. Gass executed the will naming Mrs. Gass as his heir. She acquired her interest on the date of Mr. Gass's suicide, January 29, 1998. Mrs. Gass's knowledge of the property's tainted character at the time she received this equitable interest precludes her from establishing that she is an "innocent owner" under the statute.

## II. Eighth Amendment

As executrix, claimant argues on behalf of her husband that forfeiture of the property would constitute an excessive fine in violation of the Eighth Amendment since all drug activities were confined to the first floor of the property, and because forfeiture would have a harsh impact on the owner's family.

The Supreme Court has held that civil in rem forfeitures under 21 U.S.C. § 881(a)(7) are subject to the limitations of the Eighth Amendment's Excessive Fines Clause. "In light of the historical understanding of forfeiture as punishment, the

clear focus on § 881(a)(4) and (a)(7) on the culpability of the owner, and the evidence that Congress understood those provisions as serving to deter and to punish, we cannot conclude that forfeiture under § 881(a)(4) and (a)(7) serves solely a remedial purpose." *Austin v. United States,* 509 U.S. 602, 621–22, 113 S.Ct. 2801, 2812, 125 L.Ed.2d 488 (1993). *Austin* did not establish a test for determining whether a given forfeiture is excessive, but left that question for the lower courts to resolve. *See id.* at 622–23, 113 S.Ct. 2801.

Since *Austin,* three tests have emerged for determining whether a forfeiture violates the Excessive Fines Clause: 1) the "instrumentality" or "nexus" test which focuses on whether a substantial connection exists between the alleged wrongs and the property being subjected to forfeiture; 2) the "proportionality" test which compares the harshness of the forfeiture with the severity of the crime; and 3) the hybrid "instr umentality-proportionality" test, which first utilizes an instrumentality test and then applies a proportionality analysis. *See 40 Clark Rd.,* 52 F.Supp.2d at 266–67; *United States v. 154 Manley Rd.,* 4 F.Supp.2d 65, 68–69 (D.R.I.1998) (collecting cases).

The Supreme Court recently adopted the proportionality test in the context of an in personam criminal forfeiture under 18 U.S.C. § 982(a). *See United States v. Bajakajian,* 524 U.S. 321, 118 S.Ct. 2028, 2036, 141 L.Ed.2d 314 (1998) ("[A] punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of the defendant's offense."). Under this standard, the courts must compare the amount of the forfeiture to the gravity of the defendant's offense. The *Bajakajian* test has been applied in the context of § 881(a) civil forfeitures. *See, e.g., United States v. 817 N.E. 29th Drive,* 175 F.3d 1304, 1309 (11th Cir.1999); *United States v. 415 E. Mitchell Ave.,* 149 F.3d 472, 476–77 (6th Cir.1998); *cf. United States v. Beras,* 183 F.3d 22, 29 (1st Cir. 1999) (applying the *Bajakajian* proportion-

ality test in a criminal in personam forfeiture action).

Under an instrumentality analysis, the forfeiture of the subject property easily survives Eighth Amendment scrutiny because a "substantial connection" exists between the property and the drug distribution crimes with which Mr. Gass was charged. Indeed, in the First Circuit, the instrumentality test is synonymous with the proof necessary for forfeiture. *See United States v. 28 Emery St.,* 914 F.2d 1, 3–4 (1st Cir.1990) (interpreting 21 U.S.C. § 881(a)(7) to require proof of a "substantial connection" between the property and the criminal offense). Here, the United States has produced ample evidence that the property served as the nerve center of Mr. Gass's ongoing, extensive, lucrative drug distribution activities. This is not a situation where the government seeks forfeiture of property where one isolated drug sale took place. *See Austin,* 509 U.S. at 627–28, 113 S.Ct. 2801 (Scalia, J., concurring) (suggesting that such a confiscation would be an excessive fine). Mr. Gass used the property over a period of time for the storage and distribution of cocaine. *See United States v. Chandler,* 36 F.3d 358, 365 (4th Cir.1994) (taking pure instrumentality approach and outlining factors).

Given the clear trend to incorporate proportionality review in Eighth Amendment analysis of civil forfeitures, I follow the hybrid instrumentality-proportionality approach taken by a majority of the circuits. In applying this test, many courts have conducted a multi-factor analysis. Some of the factors considered by various courts are: (1) whether the violation was related to any other illegal activities, *Beras,* 183 F.3d at 29; (2) other penalties that Congress has authorized for the crime as well as the maximum penalty provided by the Sentencing Guidelines, *id.;* (3) the extent of the harm caused by the criminal actions, *id.,* including, in the drug trafficking context, the amount of drugs and their value; *United States v. Real Property Located in El Dorado County at 6380 Little Canyon*

*Rd.,* 59 F.3d 974, 986 (9th Cir.1995); (4) the relationship of the offense to the property, *Austin,* 113 S.Ct. at 2812 n. 15; *Chandler,* 36 F.3d at 365; (5) the role and culpability of the owner, *id.;* (6) the monetary value of the owner's interest in the property forfeited, *United States v. One Parcel of Real Estate Located at 25 Sander Court, Sandwich, Illinois,* 135 F.3d 462, 466 (7th Cir.1998); *United States v. Once Parcel of Real Property, Located at 9638 Chicago Heights,* 27 F.3d 327, 330 (8th Cir.1994); (7) the fact that the property was a residence, and the effect of the forfeiture on innocent occupants of the residence, including children, *id.; United States v. Milbrand,* 58 F.3d 841, 847 (2d Cir.1995); *6380 Little Canyon Rd.,* 59 F.3d at 985. The First Circuit has not yet considered which test to apply or which factors on this menu to consider.

 One useful statement of the hybrid test is found in *Milbrand,* where the court considered:

(1) the harshness of the forfeiture (*e.g.,* the nature and value of the property and the effect of forfeiture on innocent third parties) in comparison to (a) the gravity of the offense, and (b) the sentence that could be imposed on the perpetrator of such an offense; (2) the relationship between the property and the offense, including whether use of the property and the offense was (a) important to the success of the illegal activity, (b) deliberate and planned or merely incidental and fortuitous, and (c) temporally or spatially extensive, and (3) the role and degree of culpability of the owner of the property.

58 F.3d at 847–48. The *Milbrand* formulation of the hybrid test will be followed here.

The strongest factor in claimant's favor is the harshness of the forfeiture on innocent family members. The forfeiture of this property will harshly punish Mrs.

Gass and her son, who reside in a second floor apartment, and were unaware of Mr. Gass's criminal acts at the time he committed them. While she did not contribute to the purchase price or mortgage payments, Mrs. Gass did pay the mortgage after her husband's death, and improved the property. As a working mother, she also contributed to household expenses such as food and clothing. Thus, while her household contributions do not make her eligible for protection under the resulting trust doctrine, in a family setting, money is fungible. The harshness is accentuated by Mr. Gass's suicide. Not only did Mrs. Gass and her son lose a husband and father, they also stand to lose their home.

The remaining factors, however, weigh against a finding of excessiveness. The scope of Mr. Gass's illegal activity was substantial: the evidence shows that over several months he sold ½ kilogram of cocaine to the confidential informant, receiving more than $21,000 from this one customer. Another ½ kilogram was recovered from the premises. Given these drug quantities, Mr. Gass could have received a sentence from 5 to 40 years under the statute, and 63 to 70 months under the Sentencing Guidelines. He also could have been fined anywhere from $12,500 to $125,000 under the Sentencing Guidelines,[3] and up to $2,000,000 under the statute. *See* 21 U.S.C. § 841(b)(1)(B)(ii)(II). The property is worth $175,000, and has an outstanding mortgage of $50,000. The owner's equity in the property, then, is not "grossly disproportional" to the permissible fines authorized in this case. *See 819 N.E. 29th Drive,* 175 F.3d at 1309 ("[I]f the value of forfeited property is within the range prescribed by Congress, a strong presumption arises that the forfeiture is constitutional.").

Furthermore, the undisputed facts reveal that the property was an integral part of Mr. Gass's drug dealing: he stored the drugs, money, and paraphernalia on the

---

**3.** *See* United States Sentencing Guidelines § 5E1.2(c)(4). It is not clear from the record whether Mr. Gass would have been entitled to the safety valve. *See* U.S.S.G. § 5C1.1.

property; he made telephone arrangements from the property to meet the confidential informant; he met with the informant and conducted sales at the property, which was uniquely suited to a covert operation. Mr. Gass's prominent role in these crimes has not been questioned.

■ Claimant argues that the seizure of cocaine and drug proceeds from the property renders forfeiture of the property unduly excessive. However, claimant incorrectly posits that the seizure of valuable contraband weighs *against* forfeiture; in fact, courts look to the value of drugs and contraband recovered as an indication of the severity of the underlying crimes, and the extent to which the owner benefitted personally from his crimes. *See, e.g.,* *United States v. Plescia,* 48 F.3d 1452, 1462 (7th Cir.1995) (comparing value of drugs involved with value of forfeited property); *United States v. 11869 Westshore Drive,* 70 F.3d 923, 930 (6th Cir. 1995) (approving district court's "value analysis" comparing value of drugs sold and recovered with value of forfeited property).

Claimant's final argument is that since all drug activity took place on the first floor of the property, the forfeiture of the entire property is an excessive fine. She urges the court to forfeit only the first floor apartment. However, courts have held that an entire parcel of land may be subject to forfeiture under 21 U.S.C. § 881(a)(7) even if only part of it is directly connected to drug activity. *See United States v. 141 St. Corp.,* 911 F.2d 870, 880 (2d Cir.1990) (holding that forfeiture statute permitted forfeiture of 41 unit apartment building in which only 15 units were illegally used); *United States v. 40 Moon Hill Rd.,* 884 F.2d 41, 45 (1st Cir.1989) (finding, in a pre-*Austin* case, that § 881(a)(7) calls for forfeiture of entire tract of land); *817 N.E. 29th Drive,* 175 F.3d at 1308 n. 4; *United States v. 20832 Big Rock Drive,* 51 F.3d 1402, 1410 (9th Cir.1995) ("If any part of the property is used to facilitate a drug transaction, the entire property is forfeitable.").

■ Here, one out of two units was the center of the drug activities. Under the instrumentality prong of our analysis, *Chandler* permits the Court to consider the possibility of separating the offending property from the remainder. *See* 36 F.3d at 365. That might be a tempting solution in a case where the owner's culpability is low and the drug activities were confined to one segregable piece of property. One can imagine a situation where a person is an owner of a multi-unit building and knows that another person sold drugs out of one unit. That is not the case here. While the impact on the owner's family is harsh, I cannot say that under the hybrid test this forfeiture is a grossly disproportionate penalty.

■ One final concern must be addressed. Under the relation-back doctrine, the government is only entitled to the property to the extent of the owner's equity. Any monies paid by Mrs. Gass towards the mortgage, property taxes, or for improvements to the property may not be forfeited. A contrary result would be a grossly disproportionate penalty. The government must repay these amounts to Mrs. Gass from the proceeds of any sale of the property.

### ORDER

For the forgoing reasons, Plaintiff's Motion for Directed Verdict (Docket No. 50) is **ALLOWED.** Claimant's Motion for Entry of Judgment (Docket No. 52) is **DENIED.**